**UNITED STATES of America,**
**Appellee,**

v.

**Lee Ted HORNING, Appellant.**

**No. 12725.**

United States Court of Appeals
Fourth Circuit.

Argued March 4, 1969.

Decided April 4, 1969.

Winston G. Snider, J. Arthur Bruno, Virginia Beach, Va., for appellant.

Roger T. Williams, Asst. U. S. Atty., (C. V. Spratley, Jr., U. S. Atty., on brief), for appellee.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge:

Convicted of larceny of Government property having a value in excess of $100 in violation of 18 U.S.C. § 641, Lee Ted Horning on this direct appeal contends that the evidence was insufficient to support the jury's verdict of guilty and, more particularly, that there was insufficient basis for a finding that the value of the stolen property exceeded $100.[1]

I

The evidence against Horning, a soldier whose duty station is Fort Eustis, Virginia, consists largely of the testimony of Ivan Gillihan, another soldier, who is stationed at Fort Story, Virginia. At the trial, Gillihan related the following story: Late in the evening of December 15, 1967, he and the defendant broke into a tool shed at Fort Story. The two men took a quantity of tools and put them in Horning's car; the latter did not return to Fort Eustis but remained with Gillihan at Fort Story that night and most of the following day, December 16. During this interval, the two hid the stolen tools in an abandoned gun club in

Virginia Beach. The following week Gillihan accompanied Horning to New York City, where Gillihan pawned some of the tools while Horning waited outside in his car. They split the proceeds of this transaction, fifty dollars, equally between them.

The defendant, too, testified at the trial, denying Gillihan's story and claiming that during the evening of December 15 and most of the next day he was at his station in Fort Eustis. He produced evidence which, if believed, would have placed him at Fort Eustis during the period in question, but the alibi testimony was somewhat shaken on cross-examination. Since Gillihan and Horning gave conflicting versions, it was for the jury to decide who was telling the truth. The uncorroborated testimony of an accomplice is sufficient to sustain a conviction, if it is believed beyond a reasonable doubt. United States v. Maddox, 394 F.2d 297 (4th Cir. 1968).

Moreover, there was a measure of corroboration for Gillihan's story. Horning admitted having shared with Gillihan the money derived from pawning a part of the stolen tools in New York. In February, 1968 the two men were seen by local police near the gun club where the stolen tools had allegedly been hidden, and the police testified that at that time they saw some of the stolen tools in Horning's car. When he was questioned, he denied knowing that the tools were stolen, but gave conflicting stories to explain their presence in his car.

The factual issue of the defendant's guilt was submitted to the jury and was resolved against him. On appeal, therefore, the evidence must be viewed in the light most favorable to the Government. United States v. Carrier, 344 F.2d 42 (4th Cir. 1965). Applying this standard, we find the evidence ample to support a finding that the defendant was implicated in the theft.

1. According to the statute, a convicted defendant

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1000 or imprisoned not more than one year, or both. 18 U.S.C. § 641.

## II

When the prosecution is one for larceny of goods exceeding $100 in value, the Government has the burden of proving that the stolen goods had the requisite value. United States v. Wilson, 284 F.2d 407 (4th Cir. 1960).

To establish value, the prosecution relied primarily on the testimony of Gerald Smith, an enlisted man who had charge of the tool shed at Fort Story at the time of the theft. He testified that a government catalogue kept in the tool shed listed most of the stolen tools at prices which aggregated approximately $133. A few additional items had no listed price. Although Smith had the catalogue with him at trial and relied on it in his testimony, the catalogue itself was not introduced in evidence, nor was its source identified or its reliability established.

On cross-examination, the witness admitted that his entire testimony as to value was based on the catalogue, which he saw for the first time when he obtained it from the tool room for the purpose of testifying. He further stated that he was not a purchasing agent for the Government, that he knew nothing about the Government's purchasing procedures, that his only job at the tool shed was to check tools out when they were requested for use, and that he was without independent knowledge of the value of the stolen articles. Horning's counsel then moved to strike the testimony, but the court denied the motion.

We think the motion to strike should have been granted. The value of the stolen tools—a crucial point in the trial—was sought to be established through a witness who admittedly lacked first-hand knowledge of the subject. His testimony, based on the contents of a catalogue not itself introduced into evidence, constituted inadmissible hearsay and was in violation of the best evidence rule. See United States v. Alexander, 326 F.2d 736 (4th Cir. 1964).

Apart from this testimony, the only proof of value was the stipulated testimony of Leonard Schwartz, the New York pawnbroker who loaned Gillihan fifty dollars on a portion of the stolen tools. The Government asks us to rely on the "common knowledge" that pawnbrokers do not lend the full value of pledged goods and suggests that the jury could infer from a fifty dollar loan on part of the tools that all of them must have been worth more than $100. However, in the absence of any showing concerning the practices of either pawnbrokers in general or Mr. Schwartz in particular, we think the inference the Government would draw from the stipulated testimony too speculative to establish in a criminal proceeding the value of the stolen property. Certainly no sufficient foundation was provided to enable the jury to find beyond a reasonable doubt this essential element of the felony charged.

This defect in the proof, however, does not require complete reversal and a new trial, for even without regard to value the defendant may be convicted of the lesser included offense under 18 U.S.C. § 641. United States v. Ciongoli, 358 F.2d 439 (3d Cir. 1966); United States v. Wilson, 284 F.2d 407 (4th Cir. 1960). The theft of property having a value not exceeding $100 is punishable under the statute by a fine of not more than $1000 or imprisonment for not more than one year. The offense is therefore a misdemeanor and not a felony. 18 U.S.C. § 1. The difference between the two is important to the defendant, for it affects more than the sentence; the potential future consequences to a young defendant stemming from a conviction for a felony are too serious to be ignored.

Since we affirm the defendant's conviction for a misdemeanor only, the case will be remanded for resentence. The defendant was originally sentenced under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq.[2] This disposition

2. A defendant sentenced under the Youth Corrections Act may be kept in custody for as long as four years from the date of conviction or may be released condi-

is by law made available irrespective of the grade or the maximum punishment fixed by statute for the crime of which a defendant is convicted. In the present case, therefore, the judge still has this option, but in exercising his discretion in respect to the new sentence he should take into consideration, along with other relevant factors, the reduction in the grade of the offense.

The case is remanded for further proceedings consistent with this opinion.

tionally under supervision at any time before the expiration of four years, and he must be unconditionally released on or before six years from the date of conviction. 18 U.S.C. § 5017.