UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Wyman BOYD, Defendant-
Appellant.

No. 29793.

United States Court of Appeals,
Fifth Circuit.

Aug. 3, 1971.

Floyd M. Buford, Macon, Ga., for defendant-appellant.

William J. Schloth, U. S. Atty., D. L. Rampey, Jr., Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before RIVES, GOLDBERG and MORGAN, Circuit Judges.

RIVES, Circuit Judge:

Robert Wyman Boyd was convicted of receiving, concealing and retaining two stolen mechanic's tool boxes containing tools, all the property of the United States Government and having a value in excess of $100, in violation of 18 U.S.C. § 641.[1] Boyd was named in the second count of a two-count indictment.[2] Count one charged Bobby Gene Goble, George Lewis Winburn and Charley Wright, Jr., with the theft of the tool boxes and tools. Boyd was tried alone, and the co-indictees testified against him.

[1.] "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

"Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater."

[2.] "THE GRAND JURY CHARGES:
*     *     *     *     *
"COUNT TWO
"That on or about the 30th day of April, 1969, in the Macon Division of the Middle District of Georgia and within the jurisdiction of this court, ROBERT WYMAN BOYD did receive, conceal and retain two (2) stolen mechanic's tool boxes containing hand and power tools and instruments of a value in excess of $100.00, of the goods and property of the United States, with intent to convert the same to his use and gain, and he then knew the mechanic's tool boxes to have been stolen; all in violation of 18 U.S.C. 641."

Boyd's principal defense was that he was not aware that the property, which he concedes he received, was stolen. He also challenged the Government's proof that the property in question was in fact Government property and that it had a value in excess of $100. While we find that the evidence was sufficient on all elements of the offense, the conviction must be reversed and remanded because the jury, in determining whether Boyd received stolen property and whether it had a value in excess of one hundred dollars, was allowed to consider property other than that included in the indictment. This was an improper use of "other crime" evidence.

### I. *The Government's Case.*

There was evidence from which the jury could have found that Boyd received up to seven tool boxes containing tools, plus other individual items—a pneumatic or impact wrench, several micrometers, a pressure gauge, sun glasses, wrist watch, and sleeping bag—from an Air Force sergeant, Bobby Gene Goble. Goble testified as to his part in procuring the tool boxes and selling them to Boyd. The other two indictees, Wright and Winburn, corroborated Goble's testimony that they stole the items for Goble from the tool issue center at the Base.

In the course of his employment as a sound equipment technician, Boyd had met Goble, who was moonlighting as a projectionist at a drive-in theatre. On one of his repair calls Boyd noticed some tools laying around the projection booth. Goble informed him that the tools were from the Air Base, and that he had others in a tool box at his home. The men discussed the possible purchase of tools from Goble by Boyd or anyone he might know, but there was no inquiry or mention of whether Goble was offering to sell stolen property. Boyd eventually purchased the tool box containing tools, which Goble had at his home, and got from Goble other boxes with tools which Boyd in turn sold to acquaintances.

Boyd admitted receiving at least five tool boxes, and conceded that it was possible he had handled seven in all. He purchased the first for himself, sold the second to a friend, and the rest, whether three or five in number, were passed on to another friend who sold them to mechanics at that friend's place of employment. There is no evidence that Boyd received any profit from these transactions other than the retention of the first tool box for his own use. The Government's witnesses testified that all money Boyd received from the other sales was turned over to Goble.

Boyd claimed he was not aware that the tool boxes were stolen, but thought Goble was purchasing them legitimately as surplus property. However, there was sufficient evidence from which the jury could have found guilty knowledge. Goble testified that when he delivered the second and third boxes to Boyd, they were still in their original cardboard crates which bore Government markings. Goble tore up the crates, put the scrap material in Boyd's car, and told Boyd he did not want anyone to see the crates. Also, Goble testified that on the day Boyd went to Goble's home (located on the Air Base) to purchase the first tool box, Goble showed him the flight equipment issue center where he worked. When Goble pointed out the tool issue center located in the same building, Boyd asked him if he could get a pneumatic wrench. Goble said he procured the wrench from the tool issue center in Boyd's presence, and turned it over to him when the two men got outside the building. Boyd did not pay Goble for this wrench or the other individual items mentioned above.

Goble never specifically informed Boyd that the property involved was stolen from the Air Base. However, Boyd testified that when he asked Goble if the tools were "hot," he got an equivocal answer. "I would ask him where he was getting them from. And he would say, 'From the getting place,' or some other fancy answer like that."

There was ample evidence from which the jury could have concluded beyond a reasonable doubt that Boyd was aware

that the tools and tool boxes were stolen property. Government ownership was sufficiently established. The evidence showed that property was taken from the tool issue center and that this was the property Boyd received.[3]

## II. *Other Crime Evidence.*

There are two types of other crime evidence involved. The first concerns the individual items Boyd received from Goble, independent of any tool box transaction. Testimony concerning these items was timely objected to by the defendant as constituting evidence of other criminal actions. The objections were overruled and the evidence was admitted on the theory that it was relevant on the issue of intent.

The second type of other crime evidence was the testimony concerning the receipt of tool boxes other than those boxes specified in the indictment. No objection was made to this evidence. However some discussion is appropriate for purposes of re-trial.

The prohibition of the use of other crime evidence is stated in Rule 55 of the Uniform Rules of Evidence (drafted by the National Conference of Commissioners on Uniform State Laws):

"[E]vidence that a person committed a crime or civil wrong on a specified occasion is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but * * * such evidence is admissible when relevant to prove some other material fact including absence of mistake or accident, motive, opportunity, intent, preparation, plan, knowledge or identity." [4]

The rationale supporting this rule is that while evidence of other crimes is often relevant,[5] such evidence may unduly prejudice the accused in the eyes of the jury, and there may be a tendency to vote for conviction because the accused is a "bad man." [6] The Fifth Circuit has often recognized exceptions to the rule against admissibility of other crime evidence.[7]

The list of exceptions to the other crime evidence rule is extensive, and in most situations evidence of other crimes—if closely connected in time and nature to the offense charged—can fit within at least one of the exceptions. But the mere categorizing of the evidence should not overshadow the rationale of the rule. It has been stated that the admissibility of such evidence is not to be determined entirely by its relevancy and its categorization, but that there must also be a balancing of the need for the evidence against the possible preju-

3. *See* Mora v. United States, 5 Cir. 1951, 190 F.2d 749, a case involving the theft of shirts belonging to the Government. The evidence there that a crime had been committed was similar to that in the instant case, and it was held that recovery of any of the stolen property was not necessary to prove the *corpus delicti.*

4. McCormick, Law of Evidence, 1954, § 157, p. 327 n. 2; Matthews v. United States, 5 Cir. 1969, 407 F.2d 1371, 1381 (listing exceptions); Swann v. United States, 4 Cir. 1952, 195 F.2d 689 (discussion of different form of rule, Rule 311, American Law Institute's Model Code of Evidence).

5. Weiss v. United States, 5 Cir. 1941, 122 F.2d 675, 687; McCormick, *supra*, § 155, p. 324.

6. 2 Wright, Federal Practice & Procedure, 1969, Criminal, § 409, pp. 114, 115; Gordon v. United States, 1967, 127 U.S.App. D.C. 343, 383 F.2d 936, 940.

7. *See* United States v. Restrepo, 5 Cir. 1969, 417 F.2d 927; United States v. Chapman, 5 Cir. 1969, 413 F.2d 440, 444; Matthews v. United States, 5 Cir. 1969, 407 F.2d 1371, 1381; Sutton v. United States, 5 Cir. 1968, 391 F.2d 592; Gilstrap v. United States, 5 Cir. 1968, 389 F.2d 6, 9; Pardo v. United States, 5 Cir. 1966, 369 F.2d 922, 924; Condrey v. United States, 5 Cir. 1965, 351 F.2d 456; Roe v. United States, 5 Cir. 1963, 316 F.2d 617; Ahrens v. United States, 5 Cir. 1959, 265 F.2d 514; Ehrlich v. United States, 5 Cir. 1956, 238 F.2d 481, 484; Weiss v. United States, 5 Cir. 1941, 122 F.2d 675, 687.

dice to the accused.[8] Bearing in mind the other crime evidence rule and its exceptions, we turn to a consideration of the evidence in this particular case.

### A. Evidence of Independent Items.

■ Evidence of the individual items received by Boyd was properly admitted to establish the element of intent. The fact that he received a number of items of value for no remuneration, and the circumstances of the acquisition of the pneumatic wrench,[9] were strong evidence indicating Boyd was aware that he was dealing with stolen property.

Whether this evidence was properly limited [10] to the element of intent will be discussed later.

### B. Evidence of the Tool Boxes Not Specified in the Indictment.

The admissibility of other crime evidence is largely governed by the discretion of the trial court, but the discretion is not without limit.[11]

■ Once the Government had introduced the testimony concerning Boyd's receipt of the two tool boxes,[12] including the testimony about the crates bearing Government markings and the destruction of these crates, and had introduced evidence of Boyd's receipt of individual items for which he paid nothing, there was sufficient evidence upon which the jury could base a finding of criminal intent.

The evidence of the other tool boxes was merely cumulative. It was provided by the same witnesses who testified concerning the first boxes. The jury's assessment of the credibility of these witnesses would not likely be affected by the additional testimony. If the jury believed the initial testimony, the relating of the subsequent testimony added little, if anything, to a revelation of Boyd's state of mind.

In United States v. Byrd, 2 Cir. 1965, 352 F.2d 570, the Second Circuit indicated, in dictum, that the testimony of a witness concerning a transaction similar to the ones in the indictment, was cumulative, unnecessary, and prejudicial since he was the witness who had already testified about events covered by the indictment. That Court felt that the additional testimony could have added little to the issue of intent and was prejudicial, as evidence of another criminal act, even though the act was not in itself infamous (the prosecution was under 26 U.S.C. § 7214(a) (2), receipt by an internal revenue auditor of a fee not prescribed by law).

---

8. See, United States v. Byrd, 2 Cir. 1965, 352 F.2d 570, 575; United States v. Phillips, 7 Cir. 1967, 375 F.2d 75, 81–85 (dissenting opinion); Gordon v. United States, 1967, 127 U.S.App.D.C. 343, 383 F.2d 936; Brown v. United States, 1966, 125 U.S.App.D.C. 220, 370 F.2d 242; Luck v. United States, 1965, 121 U.S.App.D.C. 151, 348 F.2d 763; McCormick, supra, § 157, pp. 332, 333.

9. The Government's proof was that Boyd requested the wrench from Goble, that Goble procured it from the tool issue center in Boyd's presence, and that Boyd was not required to pay anything for the wrench.

10. When other crime evidence is admitted for the purpose of proving intent, the jury must be instructed that the evidence is to be so limited. Ahrens v. United States, 5 Cir. 1959, 265 F.2d 514.

11. See, McCormick, supra, § 157, pp. 332, 333, for the suggestion that the district court's discretionary powers do not permit the introduction of prejudicial evidence if it is not needed. McCormick suggests that the discretionary power runs in the opposite direction, i. e., to exclude relevant evidence where its probative value is outweighed by the possible prejudicial effect on the accused.

12. By necessity this included evidence that Boyd received at least three tool boxes. The Government produced two tool boxes at the trial. The chain of evidence was adequate to establish that one of the tool boxes (Exhibit G–1) was the one which Boyd retained for his own use, and the other (Exhibit G–2) was the one Boyd personally sold to a friend. Since G–2 was delivered to Boyd at the same time as a third box, it must be conceded for the purposes of this discussion that it was proper to admit testimony concerning the three tool boxes.

In a case where the evidence indicates that if the accused engaged in felonious activity, he did so at considerable risk but with little ascertainable profit to himself,[13] great care should be exercised to insure that the accused is not unfairly prejudiced. United States v. Matot, 2 Cir. 1944, 146 F.2d 197, 198.

### III. *Jury Instructions in Evidence.*

The District Court's charge to the jury on the elements of the crime contained the following language:

"Now, let's see what are the essential ingredients of this charged crime which the Government must prove. First of all, the Government must prove that the property involved here, including some tool boxes and including some tools—and you have heard the evidence about it—whether there was five of them or four of them or three of them or two of them or one of them. However many were the number, the Government must prove that some of the property alleged, not all of it but some considerable amount of it, was stolen and that it belonged to the Government before it was stolen. The Government doesn't have to prove he stole, that two of them were stolen or that three, four or five were stolen, but that one or more tool boxes with a substantial amount of tools belonged to the Government and that it was stolen from the Government. The Government doesn't have to prove that the defendant stole it. The Government doesn't charge that the defendant stole it. But the Government must prove that some such property of some considerable value belonged to the Government and was stolen by some-body, and that after it was stolen this defendant had knowledge that it was stolen." [T. 272, 273.]

When charging on the issue of value the District Court said:

"Of course, you have heard all of the evidence as to the value and you have seen some of the property. You have seen G-1 and G-2. The Government contends that other property was also received, retained and concealed by the defendant. You have heard the contentions and you know what they are on both sides, and you have heard the evidence with respect to the value." [T. 275.]

█ The charge as to value permitted the jury to consider all of the property Boyd allegedly received, not merely Exhibits G-1 and G-2, in determining that the value of the property exceeded one hundred dollars. No limiting instruction is to be found elsewhere in the charge. This alone would require that the judgment of conviction be modified, reducing the possible maximum sentence and fine.[14]

█ While mindful that the jury instructions must be considered as a whole,[15] we hold that the first paragraph quoted above constituted error. True, this portion of the charge was intended to inform the jury of the difference between larceny and the crime charged—reception, retention and concealment. Also, since Goble identified some of the tools contained in G-1 as his legitimate personal property, the Court was properly telling the jury that this factor would not mean that the Government had failed to prove its case, i. e., all of the evidence exhibited did not have to be stolen.

---

13. The Government's evidence showed that Boyd received no profit for handling the tool boxes which were sold to others. While the Government's evidence indicated that he did purchase the first box for himself at a price far below what the Government contends is its actual value, and received other property gratis, there is no evidence that the benefit to Boyd was conditioned on his assisting Goble in future sales.

14. *See*, Theriault v. United States, 5 Cir. 1970, 434 F.2d 212; Robinson v. United States, 8 Cir. 1964, 333 F.2d 323; United States v. Wilson, 4 Cir. 1960, 284 F.2d 407.

15. Harris v. United States, 1 Cir. 1966, 367 F.2d 633; Beck v. United States, 5 Cir. 1963, 317 F.2d 865.

But the fact remains that the jury was never instructed, either at the time the evidence and testimony was introduced or during the charge, that the evidence of other crimes was to be limited only to the element of intent and could not be used as the basis for a guilty verdict. The part of the charge quoted above indicates an absence of any such limitation.

We need not decide whether the failure to so limit the use of other crime evidence is reversible error in all cases, or whether in some instances it may be termed harmless error,[16] for it is certain that Boyd's rights were substantially affected in this case.

We have found no precedent in the federal courts for permitting the Government to formally accuse a person of one act and then, as proof that he is guilty, introduce evidence of similar criminal acts, closely related in time and nature. Evidence of such acts has been sanctioned in this Circuit only when its use is strictly limited to one of the exceptions to the other crime evidence rule.[17]

Boyd was charged with only one crime, and once intent to commit the crime charged was sufficiently established, the Government had no need to prove the commission of other crimes. In the present case the only possible legitimate purpose of introducing other crime evidence was to prove intent, and the evidence was not limited to that purpose.

Specific prejudice is shown by the proof that Boyd received a pneumatic wrench, dial indicator and micrometer from Goble for no payment.[18] The inventory of G-1, introduced as G-3, lists three such items with a combined value of over one hundred dollars. We cannot say that the jury's verdict was not based on these three items,[19] since the evidence that they were improperly received by Boyd seems stronger than the evidence as to any other property.

The unrestricted use of the other crime evidence did more than establish Boyd's guilty knowledge and intent—it tended to demonstrate that Boyd was guilty of more than he stood accused of in the indictment and it was permitted to be used as basis for conviction. This is, of course, the use that the other crime evidence rule is intended to prohibit. That this type of procedure should not be permitted was stated well by Judge Hutcheson—the case "was presented and tried too much on the theory, 'Give a dog an ill name and hang him.' " Olinger v. Commissioner of Internal Revenue, 5 Cir. 1956, 234 F.2d 823, 824. For improper use of other crime evidence, the judgment of conviction must be reversed.

IV. *Issues Which May Arise at Retrial.*

Since there may be a retrial, some discussion of other points raised by the appellant is warranted.

A. *Evidence as to Value.*

Boyd contends that the verdict finding the value of the stolen property to be in excess of one hundred dollars was unwarranted. But his argument is merely that the jury disbelieved his witnesses who testified to lower values. Of course, questions of credibility are for the jury.

---

16. Fed.R.Crim.P. 52(a).

17. United States v. Restrepo, 5 Cir. 1969, 417 F.2d 927; Sutton v. United States, 5 Cir. 1968, 391 F.2d 592; Hurst v. United States, 5 Cir. 1967, 370 F.2d 161; Condrey v. United States, 5 Cir. 1965, 351 F.2d 456; Ahrens v. United States, 5 Cir. 1959, 265 F.2d 514; Weiss v. United States, 5 Cir. 1941, 120 F.2d 472, reh. denied 122 F.2d 675, cert. denied 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550.

18. The Government sought to show that such instruments contained in the tool box labeled G–1, were the ones Boyd received on independent occasions. It is consistent with the Government's theory, both at trial and on appeal, that these items were not in the tool box when Boyd received it. It is clear that the indictment did not charge Boyd with receiving anything other than two tool boxes and the tools they contained at the time of receipt. (See indictment, quoted in footnote 2).

19. The wrench alone, which the Government's proof showed Boyd requested while at the tool issue center, is listed as having a value of $81.00.

The tool boxes and the tools they contained, Exhibits G-1 and G-2, were inventoried by David Lee Cunningham, an inventory management specialist in charge of the tool issue center from which the thefts were allegedly made. Cunningham testified that he ascertained the value of each item by getting its stock number from a federal stock list and then looking up the stock number in the federal catalog to get the price. By this method he placed the value of G-1 and G-2 at $324.38 and $148.92, respectively.

Though not grounds for reversal,[20] it should be pointed out that this testimony was not solidly based.

Cunningham identified the source of the federal catalog, but did not know how the price was determined.[21] His job did not involve any buying or selling of tools, and there was no other evidence that he regularly used the catalog for its price list aspect.

Further, there is nothing in the record to indicate when the catalog was published or when its price list was compiled. *See* United States v. Horning, 4 Cir. 1969, 409 F.2d 424, 426, holding analogous testimony inadmissible as hearsay.

B. *Knowledge That the Stolen Property Belonged to the United States as an Element of the Crime.*

The defense requested that the jury be instructed that Boyd could not be convicted unless it found he was aware the property he received belonged to the United States. The requested instruction was refused, and the refusal is asserted as error.

█ Appellant's interpretation of the statute is apparently the rule in the Tenth Circuit.[22] Nonetheless, we do not think that 18 U.S.C. § 641 requires that the accused be aware that the stolen property belongs to the United States or to one of its departments or agencies.

This exact issue has apparently not been decided by the Fifth Circuit, and, while we speak only for purposes of possible retrial, we think the Ninth Circuit has the better of the argument. That Court decided in United States v. Howey, 9 Cir. 1970, 427 F.2d 1017, that the fact of United States ownership must be established as an element of the crime, but that the accused's knowledge of this element is irrelevant in an 18 U.S.C. § 641 prosecution. It is sufficient that he know that the property is stolen.[23]

C. *Denial of Request for Bill of Particulars.*

█ Boyd asserts that the District Court erred in refusing his request that the Government furnish him with information concerning the date the tools were purchased by the Government, from whom they were purchased, and the cost of the tools. In light of the evidence introduced at the trial below, the issue as to the cost of the tools may not arise again.

---

20. Defense counsel strenuously attacks Cunningham's testimony, but there was no objection to his qualifications nor suggestion that his use of sources constituted improper reliance on hearsay. The questioning of Cunningham went only to the weight of his testimony. Further, even if Cunningham's testimony had been stricken, there was sufficient evidence for the jury to find that the stolen property had a thieves' market value in excess of one hundred dollars. *See* Montgomery v. United States, 8 Cir. 1968, 403 F.2d 605.

21. Cunningham testified that the catalog price represented the cost to the Government, but there is nothing to demonstrate his qualifications to make that statement. Similarly, his statement that he was unaware of any difference between the catalog price and the retail price is entitled to no weight.

22. Findley v. United States, 10 Cir. 1966, 362 F.2d 921; United States v. Baltrunas, 10 Cir. 1969, 416 F.2d 401.

23. This Circuit has sustained convictions where the accused was unaware of the factor which made his action a federal rather than a state offense. *See* United States v. Licausi, 5 Cir. 1969, 413 F.2d 1118; Clark v. United States, 5 Cir. 1954, 213 F.2d 63.

■ We do not think there was error in refusing the other information.[24] One theory of the defense was that the tools in question may have been purchased years before, and that the purchase price might have been far less than the current price. But a lower purchase price would not preclude a conviction based on the current value of the tools exceeding one hundred dollars. The term "value" is defined in 18 U.S.C. § 641 as meaning "face, par, or market value, or cost price, either wholesale or retail, whichever is greater."

D. *Jurors Employed at Air Base.*

■ Boyd contends that the District Court committed error in refusing to strike for cause four persons from the venire who were listed as employees of the Air Force Base from which the thefts were made. A timely motion to strike was made and overruled. Boyd concedes that governmental employ does not automatically disqualify a juror, and that such jurors may be removed for cause only on the basis of actual bias.[25] He argues, however, that employment at this particular base is sufficient to establish actual bias.

Factors such as the size of the Base, any connection between the jurors and

base security or the department from which the property was stolen, or their removability from employ would have a bearing on actual bias.[26] But no offer of proof was made on such matters, nor does the record reflect any questions propounded to the jurors on these matters, or that the defense was prevented from having such questions put to the jurors.

If it were established that the employees concerned had a closer connection to the circumstances of this prosecution than mere employment at the military base, a case of implied bias might be presented. But, on this record, we are unable to say that the District Court abused its discretion in refusing to strike the Base employees for cause.[27]

E. *Other Objections to Jury Instructions.*

Appellant contends that the jurors were instructed to conform to an impossible standard when the Court told them to lay aside their "human emotions." We think this contention has no merit. This part of the charge was merely the standard instruction that the jurors should not be swayed by bias or prejudice. *See* Daniel v. United States, 5 Cir. 1959, 268 F.2d 849.

24. The defense was allowed to inspect the evidence, and most of the tools apparently were imprinted with the manufacturers' names. The evidence shows that the tools were commonly sold in the area, and their retail or wholesale value could have been ascertained by the defense, though, admittedly, this process would be tedious and time-consuming.

25. Frazier v. United States, 1948, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187; Dennis v. United States, 1950, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734.

26. In Frazier v. United States, 1948, 335 U.S. 497, 512, 69 S.Ct. 201, 93 L.Ed. 187, it was held that persons employed by the United States Treasury Department were competent to sit as jurors in a criminal prosecution for violating narcotics laws, so long as their employment was not connected with the Narcotics Bureau within the Department. In United States v. Wood, 1936, 299 U.S. 123, 141, 57 S.Ct. 177, 183, 81 L.Ed. 78, it was held that the "mere fact of a

governmental employment, unrelated to the particular issues or circumstances of a criminal prosecution" did not disqualify the employee as a juror.

27. The Government has filed a supplemental record on this appeal consisting of the original jury list from the Clerk's file. This document purportedly shows that the four jurors objected to were peremptorily stricken, and it is therefore contended that Boyd was not harmed by the refusal to strike them for cause. But on its face the document indicates that these peremptory strikes were made by the defense, and that the defense used all of its challenges authorized by Fed.R.Crim.P. 24 (b). Under these circumstances, if the refusal to strike for cause had been erroneous, this action by the defense would not have cured the error. Francone, et al. v. Southern Pac. Co., 5 Cir. 1944, 145 F.2d 732. The effect of this action would have been the reduction in the number of peremptory challenges allowed the defense, an impairment of a substantial right which would require reversal.

Appellant also objects to a paragraph of the charge in which the District Court instructed the jury that a person cannot close his eyes to what is obvious to him. Appellant feels that this charge was argumentative, and that the Court was telling the jury that the defendant had closed his eyes to obvious facts.

We do not agree. The paragraph objected to was a part of the instruction concerning the use of circumstantial evidence to establish intent. The jury was told that intent could be seen in a person's actions and that one cannot avoid becoming aware of circumstances by consciously looking in the opposite direction. The Court did not interweave into this charge the Government's factual allegations as to intent, and it cannot be said that the Court was suggesting to the jury that Boyd could not have been unaware that he was dealing with stolen property. *Cf.* Boatright v. United States, 8 Cir. 1939, 105 F.2d 737, 739. There was no error as to these aspects of the charge to the jury.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.