**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Daniel Michael DALY, Harold Dean Klemp, Joseph Diaz, Gene Floyd Criswell, and Michael Richard Ryan, Defendants-Appellants.**

Nos. 81–1654, 81–1655, 81–1657, 81–1661 and 81–1731.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1982.

Decided Aug. 12, 1983.

As Modified Oct. 4, 1983.

sive automobiles were stolen; the motor numbers were changed; counterfeit Nevada or California certificates of title were prepared with the false numbers; and these counterfeit titles were taken to Nebraska, where new title certificates were issued, based upon the counterfeit titles. Thereafter, the stolen cars were sold with the Nebraska title certificates. The indictment charged the defendants with transportation of falsely made securities in interstate commerce in violation of 18 U.S.C. § 2314, with receiving and selling falsely made securities that had traveled interstate in violation of 18 U.S.C. § 2315, with conspiracy to commit those offenses, and with causing the transportation of stolen motor vehicles in interstate commerce in violation of 18 U.S.C. §§ 2312 and 2(b).

The principal issues involved are (1) whether certain defendants were allowed the minimum 30-day period for trial preparation prescribed by the Speedy Trial Act; (2) whether a juror should have been dismissed for cause; (3) whether the Nebraska title certificates were "securities" and were "falsely made" within the meaning of sections 2314 and 2315; (4) whether there was sufficient evidence to sustain the convictions on various counts; (5) whether it was error to admit testimony of a codefendant; (6) whether it was error, in violation of the *Bruton* standard, to admit the statement of a non-testifying codefendant; and (7) whether a continuance should have been granted to defendant Ryan because of the unavailability of a witness.

William J. Landers, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Terry Amdur, Norman D. James, Heaney, James & Hearn, Jay Lichtman, Ernest C. Chen, Los Angeles, Cal., Alan M. May, Santa Ana, Cal., for defendants-appellants.

Before GOODWIN, HUG and BOOCHEVER, Circuit Judges.

HUG, Circuit Judge:

This is the consolidated appeal of the convictions of Daly, Klemp, Diaz, and Criswell, who were tried together, and of Ryan, who was tried separately on charges arising out of the same indictment. The case involves a car theft scheme by which expen-

## FACTS

On appeal we must view the evidence in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). So viewed, the evidence reveals that during 1979 and 1980, Gene Criswell masterminded a car theft ring which operated in southern California. Under Criswell's direction, a number of persons, including Joseph Diaz, stole Mercedes, Datsun, and Rolls Royce automobiles. They turned the cars over to Criswell, who, with the help of Diaz and

others, affixed a new vehicle identification number ("VIN"), either by obliterating the VIN under the hood or by replacing the federal standards plate.[1]

They also had printed blank counterfeit California and Nevada certificates of title. Criswell and others completed these "pink slips" to correspond with the altered VIN's. The certificates listed "Gene Collins" or "Collins Auto Leasing," two aliases used by Criswell, as owning the cars.

Criswell and Klemp traveled to Nebraska several times to exchange these counterfeited "pink slips" for valid certificates of title. Nebraska's vehicle registration policy does not require a car's presence in the state, nor does it direct that the state in which the vehicle was previously registered be notified of the impending registration transfer. Criswell and the others were thus able to register the stolen cars simply by turning over the counterfeit pink slips to the Nebraska authorities. They took only the counterfeit slips to Nebraska; the stolen cars themselves remained in California.

Once they had obtained the Nebraska title certificates, Criswell and the others enlisted Daniel Daly to help sell the cars, at very attractive reduced prices, to innocent purchasers. Prospective buyers were told that the cars were registered in Nebraska because they had been repossessed from lienholders and leasing companies there. In all, Criswell's operation sold 15 cars at prices ranging from $5,000 to $45,000 per car. Criswell took in nearly $400,000. The purchasers, many of whom had either driven or had the cars delivered to out-of-state homes, ultimately lost both the cars and the money they had paid for them, when authorities seized the cars.

The grand jury issued an indictment charging Criswell, Klemp, Daly, Diaz, and Ryan with conspiracy in violation of 18 U.S.C. § 371. The indictment also included 24 individual counts charging the various defendants with engaging in specific instances of misconduct in violation of 18 U.S.C. § 2314 (transporting falsely made securities in interstate commerce), 18 U.S.C. § 2315 (receiving and selling falsely made securities that have traveled in interstate commerce), and 18 U.S.C. § 2312 (interstate transportation of stolen vehicles).

Except for Ryan, all of the defendants named in the indictment were immediately arrested and arraigned. Following a jury trial, Criswell was convicted on the conspiracy count, two counts of transporting falsely made securities, four counts of receiving falsely made securities, and three counts of aiding and abetting the transportation of stolen vehicles in interstate commerce. Daly was convicted on the conspiracy count and two counts of receiving falsely made securities. Klemp was convicted on the conspiracy count, two counts of transporting falsely made securities, and three counts of transportation of stolen vehicles in interstate commerce. Diaz was convicted on the conspiracy count and one count of receiving falsely made securities.

Ryan, who was not arrested until after the conclusion of the other defendants' trial, was later convicted of conspiracy and three counts of receiving falsely made securities.

## ANALYSIS

### I. *Speedy Trial Act*

Appellants Daly, Diaz, Criswell, and Klemp claim the district judge erred in bringing them to trial before the minimum 30-day waiting period prescribed by the Speedy Trial Act (the "Act"), 18 U.S.C. §§ 3161–3174. The day after the grand jury issued its indictment, authorities arrested Criswell, Klemp, and Daly. On the same day, August 14, they appeared with

---

1. As explained by one of the officers at trial, a VIN is a unique series of identifying numbers given each car by its manufacturer. A public VIN plate can be seen from outside the car (on the dash on a Rolls Royce or Datsun and on the driver's side strike post on a Mercedes). A federal standards plate is located on or near the driver's side door. A secondary or confidential VIN is hidden from public view under the hood in the subject cars. Unlike the public VIN and federal standards plate, which are embossed on heavy gauge plates, the secondary VIN is stamped onto a nonmovable part of the car.

counsel before a United States Magistrate for determination of their bail status. Criswell, Daly, and Diaz were arraigned on August 17, at which time they pleaded not guilty. Klemp pleaded not guilty at his arraignment on August 20. The district judge, after taking the pleas, set September 15 as the date on which the defendants' consolidated trial would begin.

Criswell, Klemp, Daly, and Diaz argue that their convictions should be reversed and the indictment against them dismissed because the district judge, in beginning their trial on September 15, did not allow the minimum 30 days prescribed by 18 U.S.C. § 3161(c)(2). Their argument raises not only the issue of whether the district judge complied with the dictates of the Act, but also the question of the proper remedy for such a violation.

■ Section 3161(c)(2) provides:

Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se.

The question raised by appellants' claim is the meaning of the phrase "first appears through counsel." [2] Counsel have not cited, nor have we discovered, any case law interpreting this phrase. The Government contends that the 30-day period for all appellants ran from August 14, the day that Criswell, Daly, and Klemp appeared before the magistrate following their arrest. Appellants point out that their appearance before the magistrate was solely for the purpose of determining their bail status and that the magistrate was only empowered to consider their bail status. They assert that their attorneys at the August 14 appear-

ance had been appointed to represent them only at the initial bail hearing. They therefore contend that the 30-day period ran, at the earliest, from their appearances for arraignment—August 17 for Criswell, Daly and Diaz, and August 20 for Klemp.

■ The district court concluded that in a multi-defendant case the 30-day period for all defendants ran from the first appearance of any one of them. The result of the district court's view is to make the existence of each defendant's statutory rights dependent on the Government's decision to join the cases and on his codefendants' availability for arrest. Nothing in section 3161(c)(2) permits this conclusion. Instead, its language indicates that each defendant must be considered on an individual basis, and we review appellants' claims in that manner.

■ Diaz made no appearance before the magistrate. His initial appearance in this case was at his arraignment on August 17. The earliest possible trial date for Diaz was 30 days later, on September 16. By ordering him to trial on September 15, the district judge clearly violated section 3161(c)(2) as to Diaz.[3]

■ Klemp appeared at the bail hearing on August 14 with an attorney explicitly appointed to represent him at that hearing. We conclude that appearance did not constitute his "first appearance through counsel" for purposes of the Act. The legislative history underlying section 3161(c)(2) indicates the provision was meant to guarantee a minimum period of thirty days for the preparation of the defense. *See* Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, *Guidelines to the Adminis-*

---

**2.** None of the appellants proceeded pro se and none of them consented *in writing* to the trial date. When Diaz's counsel suggested that the earliest possible trial date was September 16, the district court noted that commencing trial on that date would carry the proceedings into the following Saturday. The court indicated its willingness to adopt that alternative, and waited for a response from counsel; none was made. The Government now contends that counsels' silence constituted consent to the tri-

al date. We expressly reject the suggestion that the statutory requirement of a written waiver may be equated with waiver by silence.

**3.** All time calculations in this opinion follow Fed.R.Crim.P. 45(a), which provides that "[i]n computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included."

*tration of the Speedy Trial Act of 1974, as Amended* [hereinafter Judicial Conference Guidelines], at 10 (1981). The "Congressional concern was that a defendant be given a *reasonable* time to obtain counsel and that counsel be provided a reasonable time to prepare the case." *Id.* at 11–12 (emphasis in original).

To fulfill this policy, the 30-day period should commence only after the indictment or information has been filed and made public and a defendant has first appeared with counsel engaged or appointed to represent him at trial. We therefore hold that the 30-day period begins to run when an attorney appears on a defendant's behalf after the indictment or information has been filed, unless there is an indication that the attorney is appearing only for a limited purpose and will not further represent that defendant at trial. If the attorney has been appointed to represent the defendant only for a specific pre-arraignment purpose or at the time of his initial appearance or prior to the filing of the indictment or information disavows his intent to represent the defendant further, the period will not commence because the statutory purpose for the 30-day delay would not be fulfilled.

Klemp was represented at the bail hearing by an attorney appointed only for that purpose. On August 17, Klemp's trial counsel was appointed and appeared to seek delay of Klemp's arraignment. That appearance triggered the running of the 30-day period as to Klemp. *See* Judicial Conference Guidelines at 11 (first appearance "may be indicated not only by a physical appearance in court, but also by formal entry of an appearance ... or by acceptance of a court appointment"). The earliest date on which Klemp could have been tried was thus September 16, and section 3161(c)(2) was violated as to him.

In contrast, Criswell and Daly appeared at the August 14 bail status hearing with the attorneys who went on to represent them at trial. Their attorneys thus undertook preparation of the defense from the date of that hearing. Trial on September 15 was not within 30 days of Criswell's and Daly's first appearances through counsel, and was therefore timely.

Having determined that Diaz and Klemp were brought to trial before the 30-day pretrial period mandated by section 3161(c)(2) had passed, we must next determine the effect of this procedural error. We again are confronted with an issue of first impression.

Only one section of the Act specifies the sanctions for violations of the defendants' speedy trial rights. Section 3162(a)(2) provides that

> If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant.

Section 3161(c), to which section 3162(a)(2) refers,[4] originally only set the maximum time periods within which a defendant had to be arraigned and tried. *See* Pub.L. No. 93–619, § 101, 88 Stat. 2076, 2077 (1975). In its 1979 amendment of the Act, Congress revised section 3161(c) so that it appears in two subsections. The content of the former section 3161(c), which prescribed a 70-day maximum period, became section 3161(c)(1); and section 3161(c)(2) was added, which prescribed the new 30-day minimum pretrial period. Pub.L. No. 96–43, § 2, 93 Stat. 327

---

**4.** Section 3161(c), to which section 3162(a)(2) refers, provides:

> (c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate on a complaint, the trial shall commence within seventy days from the date of such consent.
>
> (2) Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se.

(1979). Congress did not amend section 3162(a)(2) to conform to this change. The language of section 3162(a)(2), which speaks in terms of bringing a defendant to trial within a time "limit . . . as extended," does not appear logically to apply to a situation in which the defendant is brought to trial too quickly. For these reasons, we believe it is open to question whether Congress intended the section 3162(a)(2) sanction to apply to the failure to comply with the 30-day minimum prescribed by section 3161(c)(2). *See* Judicial Conference Guidelines at 67–68 ("[t]he language of section 3162(a) suggests that the dismissal sanction applies only to cases that exceed the time limits prescribed in sections 3161(b) and (c)(1)").

 We need not determine whether section 3162 applied to a section 3161(c)(2) violation, however, because Klemp and Daly failed to comply with an essential requirement of section 3162. The statute provides that dismissal may be ordered only "on motion of the defendant." Although appellants sought a continuance of the trial on the basis of section 3161(c)(2), at no time did they move for dismissal of the indict-

ment. We therefore conclude that remedy is not available to them.[5]

 The Act provides no specific guidance as to the appropriate remedy in this case. As we have observed, the purpose of section 3161(c)(2) is to insure that defendants are allowed sufficient time to prepare for trial. Consistent with this underlying policy, section 3161(c)(2) essentially establishes that any pretrial preparation period shorter than 30 days is inadequate *per se*. A violation of section 3161(c)(2) thus should be treated like an erroneously denied motion for a continuance, because both of these procedural errors deny a defendant a fair trial by forcing him into court before he has had adequate time for preparation. *See United States v. Burton,* 584 F.2d 485, 489 (D.C.Cir.1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979) ("stripping away the opportunity to prepare for trial is tantamount to denying altogether the assistance of counsel for the defense"). We therefore reverse the judgments entered against Diaz and Klemp and remand for a new trial.[6] We now consider the claims raised by the remaining appellants.

---

**5.** A defendant's failure to raise in the trial court the claim that this act has been violated bars assertion of the issue on appeal. *United States v. Tercero,* 640 F.2d 190, 195 (9th Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809. The necessity of alerting the trial court is of special importance when it is contended that the trial is set prematurely because if the error is called to the court's attention, a continuance may be granted. Here the judge was alerted by the motion for continuance and the objections of counsel to the early trial setting.

**6.** Klemp and Diaz also claim there was insufficient evidence to support their convictions on certain counts of the indictment. For guidance in applying double jeopardy principles, we consider these contentions, even though we remand as to these defendants on speedy trial grounds. *See Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

Diaz contends there was insufficient evidence to tie him to one of the offenses alleged in the conspiracy count, the agreement to transport falsely made securities in interstate commerce. However, there was sufficient evidence to prove beyond a reasonable doubt

Diaz's connection to the conspiracy. Having established that connection, it was not necessary for the Government to prove Diaz's involvement in every act done in furtherance of the conspiracy. *See United States v. Beecroft,* 608 F.2d 753, 757 (9th Cir.1979). Therefore, there was sufficient evidence to support his conviction on the conspiracy count. *See also* the discussion of the statutory definition of falsely made securities, *infra* at 1506–1509.

Klemp contends there was insufficient evidence that he transported falsely made securities in interstate commerce, as alleged in counts six and seven of the indictment. We disagree. Witnesses placed Klemp in Nebraska on the dates the certificates of title were issued. There was evidence that Klemp and Criswell had the certificates issued and the cars registered. A short time later, Klemp was in California and in possession of one of the certificates. Viewed in the light most favorable to the Government, this evidence supports the conclusion that Klemp transported the certificates from Nebraska to California. *See also* the discussion of the evidence supporting counts 23, 24, and 25, *infra* at 1509–1510.

## II. Dismissal of Juror

Criswell argues that the district judge erred in failing to dismiss for cause a prospective juror who, in Criswell's view, demonstrated actual bias during voir dire. The juror, Mr. Damwyk, advised the judge that he had been inspector of police for the Dutch government prior to 1962. The following colloquy ensued:

THE COURT: Is there anything in your former employment that might affect your judgment either for or against the government or for or against the defendants here?

VENIREMAN DAMWYK: I cannot be sure about it.

THE COURT: Only you can tell us that, Mr. Damwyk.

VENIREMAN DAMWYK: Well, I will try the best.

THE COURT: Do you feel that you could decide this case on the evidence that you hear from the witnesses and from the evidence that is introduced to you?

VENIREMAN DAMWYK: That's right.

THE COURT: And not have any prejudice against the defendants?

VENIREMAN DAMWYK: I will try.

THE COURT: Because of your former employment?

VENIREMAN DAMWYK: I will try.

THE COURT: Well, do you think you could do that? That is only a decision that you can make, Mr. Damwyk.

VENIREMAN DAMWYK: Okay, I will do it.

The defendants challenged Damwyk for cause. The district judge denied the motion. Defense attorneys consequently used one of the 10 peremptory challenges collectively allotted the defendants to dismiss Damwyk.

The district court must excuse a prospective juror if actual bias is discovered during voir dire, essentially because failure to do so may force parties to exhaust their peremptory challenges on persons who should be excused for cause and, as a result, has the effect of abridging the purpose behind the right to exercise peremptory challenges. *United States v. Allsup,* 566 F.2d 68, 71 (9th Cir.1977); *see United States v. Nell,* 526 F.2d 1223, 1229 (5th Cir.1976). Such an infringement, if it causes a prejudicial diminution of peremptory challenges, constitutes reversible error. *Hines v. Enomoto,* 658 F.2d 667, 672 (9th Cir.1981); *Allsup,* 566 F.2d at 71; *United States v. Boyd,* 446 F.2d 1267, 1275 n. 27 (5th Cir.1971).

The issue here is whether Damwyk demonstrated actual bias in his responses to the district judge's questions. None of Damwyk's responses can be accurately characterized as an express admission of bias. However, actual bias can also be revealed by circumstantial evidence. *Allsup,* 566 F.2d at 71; *Nell,* 526 F.2d at 1229.

Damwyk's former employment as a policeman does not necessarily indicate he was inherently biased against criminal defendants. The mere fact that a person was employed on a police force is not *per se* a disqualification for service on a jury in a criminal trial. *See United States v. Mitchell,* 556 F.2d 371, 379 (6th Cir.), *cert. denied,* 434 U.S. 925, 98 S.Ct. 406, 54 L.Ed.2d 284 (1977); *Mikus v. United States,* 433 F.2d 719, 724 (2d Cir.1970). Furthermore, Damwyk had not been a policeman for 20 years. Although Damwyk initially did indicate some uncertainty as to his ability to decide the case on the evidence and to be impartial, he ultimately concluded, "Okay, I will do it."

Criswell has failed to show that Damwyk was actually biased. The district judge did not err in declining to excuse Damwyk for cause.

## III. Statutory Interpretation

Criswell and Daly claim their convictions for violating sections 2314 and 2315 and conspiring to violate those sections did not comply with statutory requirements. Criswell contends that the Nebraska certificates of title were not "securities."[7] They both contend that the certificates were not

---

7. Daly concedes this point.

"falsely made" within the meaning of the statutes.[8]

 The definition of "securities" appears in section 2311. It includes a "certificate of interest in property" and an "instrument or document or writing evidencing ownership of goods." Under Nebraska law, a certificate of title is the exclusive means of transferring ownership of a motor vehicle. *First National Bank & Trust v. Ohio Casualty Ins. Co.,* 196 Neb. 595, 244 N.W.2d 209, 212 (1976); *Loyal's Auto Exchange, Inc. v. Munch,* 153 Neb. 628, 45 N.W.2d 913, 920 (1951); Neb.Rev.Stat. § 60–105. The certificate is therefore "generally conclusive of ownership." *First National Bank & Trust,* 244 N.W.2d at 212. It has value based upon the vehicle whose ownership it evidences. *See United States v. Simpson,* 577 F.2d 78, 80 (9th Cir.1978). The certificate is thus an instrument "evidencing ownership of goods" and must be classified as a security under section 2311. *See United States v. Elliott,* 571 F.2d 880, 908 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *United States v. Dickson,* 462 F.2d 184 (4th Cir.), *cert. denied,* 409 U.S. 876, 93 S.Ct. 126, 34 L.Ed.2d 129 (1972); *see also United States v. Zwego,* 657 F.2d 248, 250 (10th Cir.1981), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1275, 71 L.Ed.2d 460 (1982) (application for certificate of title constitutes security).

Criswell's reliance on *United States v. Canton,* 470 F.2d 861 (2d Cir.1972), is misplaced. *Canton* held that a motor vehicle registration certificate was not a security under section 2311. The court noted that the purpose of registration was merely "to show that the motor vehicle may rightfully be operated on public highways." *Id.* at 862. However, the court expressly distinguished certificates of title: "[T]he legislature did not consider a certificate of registration to be the equivalent of a certificate of title as evidence of ownership." *Id.* at 863. *Canton* thus does not support Criswell's claim.

The indictment charged appellants with transporting and receiving falsely made securities in violation of sections 2314 and 2315. Criswell and Daly sought dismissal of the indictment, claiming the Nebraska certificates of title were not falsely made because, although they contain false information, they were legitimately issued by state authorities and were thus genuine. Specifically, appellants argued that "falsely made" means "forged," and that no forgery occurred here.

We have rejected the contention that "forged" and "falsely made" are synonymous. "False making is the conduct element of forgery, and not its equivalent...." *United States v. Price,* 655 F.2d 958, 960 (9th Cir.1981), *citing Wright v. United States,* 172 F.2d 310, 311 (9th Cir. 1949). This rule is consistent with the view of other courts that "falsely made" and "forged" describe distinct violations of sections 2314 and 2315. *See Stinson v. United States,* 316 F.2d 554, 555 (5th Cir.1963); *Pines v. United States,* 123 F.2d 825, 828 (8th Cir.1941). These statutes therefore apply not only to the narrowly defined crime of forgery, but to a broader collection of acts characterized as "false makings."

---

**8.** The relevant portion of 18 U.S.C. § 2314 which formed the basis for the substantive offenses charged and one of the bases for the conspiracy charge states in the third paragraph:

> Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; ... shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

The relevant portion of 18 U.S.C. § 2315 which formed the basis for the substantive offenses charged and one of the bases for the conspiracy charge states in the second paragraph:

> Whoever receives, conceals, stores, barters, sells, or disposes of any falsely made, forged, altered, or counterfeited securities or tax stamps, or pledges or accepts as security for a loan any falsely made, forged, altered, or counterfeited securities or tax stamps, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been so falsely made, forged, altered, or counterfeited; ... shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

Neither our cases nor the National Stolen Property Act clearly define "falsely made." However, we agree with the Fifth Circuit's conclusion that "the purpose of the term 'falsely made' was to ... prohibit the fraudulent introduction into commerce of falsely made documents *regardless of the precise method* by which the introducer or his confederates effected their lack of authenticity." *United States v. Mitchell,* 588 F.2d 481, 484 (5th Cir.), *cert. denied,* 442 U.S. 940, 99 S.Ct. 2881, 61 L.Ed.2d 310 (1979) (emphasis in original) (quoting *United States v. Huntley,* 535 F.2d 1400, 1402 (5th Cir.1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1548, 51 L.Ed.2d 773 (1977)). There is no question that the certificates of title in this case were intended to falsely represent the ownership and identification of the stolen vehicles. Despite that, appellants would have us hold that the certificates were not falsely made because an authorized state official recorded the false information on the genuine title forms. "A genuine instrument containing a false statement of facts, used in support of a claim, the party knowing it to be false, and using it with the intent to defraud, presents a case not distinguishable in principle, or in turpitude, or in its mischievous effects, from one in which every part of the instrument is fabricated ...." *United States v. Staats,* 49 U.S. (8 How.) 40, 47, 12 L.Ed. 979 (1850). We do not believe Congress intended to exempt clever schemes that induce state participation in the creation of fraudulent documents from the scope of sections 2314 and 2315. We therefore hold that the Nebraska certificates of title were "falsely made."

## IV. *Sufficiency of the Evidence*

Daly contends there was insufficient evidence to sustain his conviction on count one, the general conspiracy charge. The court employed a special verdict form, on which the jury indicated the specific offenses it found Daly had conspired to commit. Daly now challenges the evidentiary bases of those special verdicts.

We must uphold a conviction for conspiracy if there is sufficient evidence to establish the defendant's participation in at least one of the underlying offenses that the jury found he had conspired to commit. *United States v. Carman,* 577 F.2d 556, 567 & n. 12 (9th Cir.1978). We have rejected Daly's claim that he did not transport "falsely made" securities. That charge is sufficient in itself to support the conspiracy charge. We therefore do not reach Daly's claim that there was insufficient evidence as to the other underlying offenses.[9]

Criswell challenges the sufficiency of the evidence to support his convictions on counts 23, 24, and 25. Those counts charged him with aiding and abetting Klemp's violation of section 2312, which prohibits interstate transportation of stolen motor vehicles.

Sufficient evidence of Klemp's participation as a principal who caused the vehicles to be transported interstate was provided by the testimony of David Silva. Silva testified that he had an automobile dealership in New Jersey. He negotiated with Klemp the sales of the cars on behalf of customers in New Jersey. He had repeated contacts with Klemp and Daly, both prior to sale and after the cars were seized from their New Jersey purchasers. Of the three vehicles on which the challenged counts were based, only one was driven from California by Silva. Silva testified that the second, destined for one of Silva's New Jersey customers, was driven cross-country by Klemp. He stated that the third was delivered to the New Jersey customer in Denver.

This testimony permits the conclusion that the movement of the cars out of California was not merely fortuitous, but "part of the total scheme" for selling the cars. *See United States v. Berlin,* 472 F.2d 13, 15

---

9. Daly claims he could not have transported securities "having a value of $5,000 or more" as required by sections 2314 and 2315, because the certificates of title had no intrinsic value.

He also contends the certificates were not "stolen, converted or taken by fraud" because they were lawfully issued by state authorities.

(9th Cir.1973). Other evidence before the jury permitted it to conclude that Criswell had willfully participated in that scheme. *See* 18 U.S.C. § 2; *United States v. McDaniel,* 545 F.2d 642, 644 (9th Cir.1976). The jury thus could have concluded beyond a reasonable doubt that Criswell had abetted the interstate transportation of the cars.

## V. *Admission of Codefendant's Testimony*

■ Daly objects to the admission of testimony by Shelly Ginger, a codefendant, but not a party to this appeal. Ginger testified that she and Criswell went to Daly's car lot, where she received a car known by Criswell and Ginger to be stolen. Daly challenged the relevancy of this testimony, arguing that it referred to Ginger's acquisition of a stolen vehicle that had not been named in the conspiracy count, and that knowledge of the stolen nature of the cars named in the substantive counts was not an element of the offenses charged therein.

Fed.R.Evid. 404(b) provides that evidence of "other crimes, wrongs, or acts" is admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Such testimony is inadmissible "only when it proves nothing but the defendant's criminal propensities." *United States v. Diggs,* 649 F.2d 731, 737 (9th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981) (noting that "[t]his circuit has adopted the position that Rule 404(b) is an inclusionary rule"); *see also United States v. Herrell,* 588 F.2d 711, 714 (9th Cir.1978), *cert. denied,* 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979). Following this rule, we find the testimony admissible as circumstantial evidence that Daly knew the cars he sold for Criswell were stolen and (in reference to the substantive counts) that their title certificates were false. We note, moreover, that the district judge's carefully worded limiting instruction, which warned the jury that they were to use the testimony only to determine whether Criswell and Daly knew they were dealing in stolen cars, demonstrates that he considered the effect of the testimony before admitting it. We agree that the testimony's probative value was not outweighed by its prejudicial effect, and conclude that the judge did not abuse his wide discretion in ruling that it was admissible. *See Diggs,* 649 F.2d at 737.

## VI. *Admission of Codefendant's Statement*

■ Daly asserts that the Government's improper use of a non-testifying codefendant's statement deprived him of a fair trial in violation of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). A government witness testified that codefendant Diaz had stated that he had obtained a false Nebraska title from someone in Redondo Beach, California. Other testimony indicated that Daly lived in Redondo Beach and stored stolen vehicles at his residence. Although the specific count against Daly toward which this testimony was directed was later dismissed, Daly claims the testimony prejudiced the jury's deliberations on the other counts.

*Bruton* prohibits admission of "the powerfully incriminating extrajudicial statements of a codefendant." *Id.* at 135, 88 S.Ct. at 1627. Although Diaz's statement permitted an inference of Daly's involvement, we doubt that it was "powerfully incriminating." Assuming, however, that its admission did violate Daly's sixth amendment rights, that error does not require automatic reversal. *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *United States v. Lutz,* 621 F.2d 940, 947 (9th Cir.1980), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981). Considering the amount of properly admitted evidence against Daly and the relative insignificance of this testimony in reference to the counts on which Daly was convicted, we find that the error, if any, was harmless beyond a reasonable doubt and thus does not require reversal.

## VII. *Denial of a Continuance*

Ryan was indicted with the other defendants; but, because he was not taken into

custody until the others already had stood trial, he was tried separately. He was convicted on three counts of transporting and receiving falsely made securities and one count of conspiracy.

On the day before his trial began, Ryan moved for a continuance. He submitted that his wife, who would be his sole defense witness and who allegedly would offer exculpatory testimony relating to both the conspiracy count and the other counts specifically involving falsely made securities, was unavailable to testify on his behalf. At the time, his wife was eight months pregnant. Her doctor had recommended that she avoid "severely emotional" situations because she had suffered minor difficulties with the pregnancy. The district judge, after conducting a hearing on Ryan's motion, denied the motion. The next day, Ryan filed an emergency motion with this court seeking a writ of prohibition staying the trial. The writ was denied.

The district court's decision to grant or deny a requested continuance is within its discretion and "will not be disturbed on appeal absent clear abuse of that discretion." *United States v. Hoyos,* 573 F.2d 1111, 1114 (9th Cir.1978). Ryan argues that the district judge abused this discretion. He offered various medical records documenting his wife's condition, as well as a letter from her physician indicating that she should avoid "severely emotional" situations. However, none of the evidence indicated. that Ryan's wife was experiencing anything but a normal pregnancy. Her physician informed both attorneys not only that her condition was not serious, but also that he was unfamiliar with the stresses associated with testifying at trial and thus was unsure whether such an experience would be "severely emotional." The district judge's finding that Ryan's wife was available to testify, therefore, was supported by the evidence he reviewed. His denial of the motion for continuance was not an abuse of discretion.

Ryan also contends that he was deprived of effective assistance of counsel when the continuance was denied because counsel only had ten days to review the grand jury transcript. We find no merit in this contention.

## CONCLUSION

The convictions of Diaz and Klemp are REVERSED and REMANDED for retrial. The convictions of Criswell, Daly, and Ryan are AFFIRMED.