**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

JOHN R. MALONEY,
    *Defendant-Appellant*.

No. 11-50311

D.C. No.
3:10-cr-02803-
DMS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
July 13, 2012—Pasadena, California

Filed November 14, 2012

Before: Ronald Lee Gilman,[*] Richard C. Tallman, and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith;
Dissent by Judge Gilman

---

[*] The Honorable Ronald Lee Gilman, Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

The panel affirmed a jury conviction for possession of marijuana with intent to distribute.

The panel held:

• The district court did not abuse its discretion in denying the defense surrebuttal summation, because the prosecution's statements in rebuttal summation addressed the arguments made in defense counsel's closing argument and were based on permissible inferences from the record.

• The district court did not abuse its discretion in denying the defendant's motion to excuse one of the prospective jurors for cause, because finding a prospective juror (who initially admits bias) to be impartial is proper if the prospective juror "ultimately asserts an ability to be fair and impartial."

• Even assuming de novo review, the district court did not err in denying defendant's proposed jury instruction, because jury instructions that indicate that the jury may "consider character evidence along with all other evidence upon the issue of guilt" sufficiently instruct the jury that character evidence may create reasonable doubt of guilt.

Dissenting, Judge Gilman wrote that the district court abused its discretion by refusing the defendant's request to respond in a surrebuttal to the government's "lack-of-

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

luggage" argument that was raised for the first time during rebuttal; and that the error warrants a new trial.

---

#### COUNSEL

John C. Lemon, San Diego, California, for Defendant-Appellant.

Bruce R. Castetter and Steve Miller (argued), Assistant U.S. Attorneys, for Plaintiff-Appellee.

---

#### OPINION

John Maloney appeals his jury conviction and sentence for possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

The district court did not abuse its discretion in denying the defense surrebuttal summation, because the prosecution's statements in rebuttal summation addressed the arguments made in defense counsel's closing argument and were based on permissible inferences from the record. The prosecution only strays from the proper bounds of rebuttal summation when it impermissibly raises new arguments in rebuttal summation. *See United States v. Taylor*, 728 F.2d 930, 937 (7th Cir. 1984). The prosecution impermissibly raises new arguments beyond the proper scope of rebuttal summation when the door has not been opened by defense counsel's summation or when the prosecution's arguments are not based on reasonable inferences from the record. *See United*

*States v. Sayetsitty*, 107 F.3d 1405, 1409–10 (9th Cir. 1997); *United States v. Gray*, 876 F.2d 1411, 1417–18 (9th Cir. 1989). Further, the district court did not abuse its discretion in denying defendant's motion to excuse one of the prospective jurors for cause, because finding a prospective juror (who initially admits bias) to be impartial is proper if the prospective juror "ultimately asserts an ability to be fair and impartial." *United States v. Martinez-Salazar*, 146 F.3d 653, 656 (9th Cir. 1998), *rev'd on other grounds*, 528 U.S. 304 (2000). Lastly, even assuming de novo review, the district court did not err in denying defendant's proposed jury instruction, because jury instructions that indicate that the jury may "consider character evidence along with all other evidence upon the issue of guilt" sufficiently instruct the jury that character evidence may create reasonable doubt of guilt. *See Carbo v. United States*, 314 F.2d 718, 746 (9th Cir. 1963).

## I. BACKGROUND

On June 17, 2010, John Maloney drove a Freightliner tractor-trailer to the Highway 78 Border Patrol checkpoint in Imperial County, California. At the checkpoint, a detector canine (Aja-D) alerted to the tractor-trailer. Maloney agreed to exit the tractor-trailer so that the canine could perform a second sniff around the vehicle. Aja-D again alerted to the sleeping area (located in the back of the cab). Maloney then agreed to a physical search of the tractor-trailer. Border Patrol Agents found 112 sealed packages (weighing a total of 146.06 kilograms or 321.33 pounds) of marijuana in the bunk area behind the driver's seat. The top bunk contained nine bricks of marijuana in a black garbage bag. Agents found the remaining bricks in a compartment under the bottom bunk.

A grand jury indicted Maloney for knowingly and intentionally possessing, with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 841(a)(1). A jury trial followed, and the jury found Maloney guilty of the indicted offense. On August 5, 2011, the district court entered judgment and sentenced Maloney to sixty-three months imprisonment. Maloney filed a timely appeal.

Maloney appeals his conviction by arguing that (1) the district court abused its discretion in denying his motion to excuse a juror for cause; (2) the district court abused its discretion by refusing Maloney's proposed jury instruction regarding the ability of the jury to find reasonable doubt based on credibility evidence; (3) the prosecution raised new arguments in rebuttal and the district court committed reversible error by refusing his request for surrebuttal based on those new arguments; and (4) the cumulative effect of the errors warrants reversal.

## II. DISCUSSION

### A. Jury Selection

#### 1. Legal Standards

When reviewing a district court's finding of juror impartiality "the deference due to district courts is at its pinnacle: 'A trial court's findings of juror impartiality may be overturned only for manifest error,'" *Skilling v. United States*, 130 S. Ct. 2896, 2923 (2010) (quoting *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991)), or in other words, for abuse of discretion, *United States v. Gonzalez*, 214 F.3d 1109,

1112 (9th Cir. 2000); *United States v. Poschwatta*, 829 F.2d 1477, 1484 (9th Cir. 1987), *overruled on other grounds recognized by United States v. Powell*, 936 F.2d 1056, 1064 n.3 (9th Cir. 1991). Although "[d]oubts regarding bias must be resolved against the juror," *Gonzalez*, 214 F.3d at 1114 (quoting *Burton v. Johnson*, 948 F.2d 1150, 1158 (10th Cir. 1991)) (internal quotation marks omitted), "[t]he defendants bear the burden . . . of showing that [the prospective juror] was actually biased, and that the district court abused its discretion or committed manifest error when it failed to excuse her for cause," *United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995). If the district court abuses its discretion, "[t]he presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice." *Gonzalez*, 214 F.3d at 1111 (quoting *Dyer v. Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998)) (internal quotation marks omitted).

"The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury," *Skilling*, 130 S. Ct. at 2912–13, and "[t]he bias or prejudice of even a single juror is enough to violate that guarantee," *Gonzalez,* 214 F.3d at 1111. "Challenges for cause are the means by which partial or biased jurors should be eliminated" in order to protect the Sixth Amendment guarantee. *Id.* "To disqualify a juror for cause requires a showing of either *actual* or *implied* bias . . . ." *Id.* "Actual bias is 'bias in fact'—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Id.* at 1112 (alteration omitted) (quoting *Unites States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)) (internal quotation marks omitted).

The district court does not abuse its discretion (or manifestly err) when it finds a prospective juror who initially admits bias to be impartial after the prospective juror "ultimately asserts an ability to be fair and impartial." *Martinez-Salazar*, 146 F.3d at 656.

### 2. Pertinent Facts

During voir dire, the district court asked the prospective jurors, "Do you believe that you would be predisposed in favor of law enforcement or—in other words, that they start with . . . the thumb on the scale and they have a favorable view in your mind; or do you feel that you can fairly evaluate their testimony based on their testimony?" In response to this question, prospective juror six and the court had the following exchange:

> **Prospective Juror:** I just want to put it out there, I had a lot of interaction with the San Diego Sheriff's Department. I would be predisposed to – you know, like what he was saying, because of their training, my experiences I have had with them, you know, all of my interactions I have had with the San Diego Sheriff's Department, more favorable. But I still think I could be impartial as far as, you know, carrying the weight. I just had to put it out there, I would be predisposed to have favorable.
>
> **The Court:** Just so I am clear. If anyone from law enforcement took the stand, are you saying he or she starts a leg up on the other

witnesses; or do you feel like they are just like any other witness and you have got to evaluate what they are going to say?

**Prospective Juror:** For me there might be – well, they have a leg up.

. . . .

**The Court:** Right. Do you believe that as police officers or law enforcement that they – these individuals are subject to the same frailties that we all are –

**Prospective Juror:** Yes.

**The Court:** – Regardless of our position? With that belief in mind, do you feel that when someone from law enforcement takes the stand you would give them the benefit of the doubt; or would you start on a level playing field and determine, based on what they are saying, their responses to the questions, their ability to perceive or hear the things they are testifying to, those types of things, you would be able to determine whether you believed that testimony in whole or in part or not at all?

**Prospective Juror:** I think I could, you know, put it to a level playing field, even though my experiences in the past, you know, the role I am playing right now.

**The Court:** Can you set aside –

**Prospective Juror:** I can set that aside and be more impartial.

**The Court:** So do you feel that you can set aside that prior experience and just evaluate each witness as he or she takes the stand?

**Prospective Juror:** Right. Yes.

**The Court:** Do you feel you can do that?

**Prospective Juror:** Yes, sir.

Maloney's defense counsel moved to strike several jurors for cause, including prospective juror six. Defense counsel noted that prospective juror six stated that he would give law enforcement "a head start in terms of weight" compared to other witnesses, or a "leg up. And then later he backed off of that a little bit." As such, defense counsel thought that he should be excused for cause.

The district court denied the challenge of prospective juror six for cause, because

> [m]any jurors say things like, generally I believe law enforcement because they are trained observers, they don't have a bias or a stake in the outcome.
>
> Then, in my mind, the question is, is that just a general observation or are they really

going to evaluate that testimony in a predisposed way?

I understood all three [of the jurors challenged for cause] to say that they generally have favorable experiences with law enforcement, they generally believe law enforcement, for the reasons I have indicated.

But they were also very clear that they understand law enforcement witnesses, just like any other witness, has to be evaluated based on his or her presentation in court and objective criteria to determine credibility. And would not be they would not be – giving these witnesses favor[i]tism simply because they represent law enforcement.

So for those reasons I would respectfully deny the challenges.

Thereafter, Maloney used his ten peremptory challenges, but prospective juror six was not challenged. Prospective juror six was seated on the jury as juror four (hereinafter "Juror 4").

**3. Analysis**

Juror 4 initially indicated bias in favor of law enforcement. However, Juror 4 ultimately definitively and unequivocally stated that he could set aside any partiality to law enforcement. Juror 4 stated: (1) that he thought law enforcement officers are subject to the same frailties as all

people; (2) that he thought he could put the testimony of law enforcement on a level playing field as other witness testimony; and (3) that, as to whether he could set aside any bias that might come from his past experience with law enforcement, "I can set that aside and be more impartial." Most importantly, the second-to-last question of the court was, "So do you feel that you can set aside that prior experience and just evaluate each witness as he or she takes the stand?" Juror 4 responded: "Right. Yes." Then the court ended by asking, "Do you feel you can do that?" Juror 4 responded: "Yes, sir." Therefore, the district court did not abuse its discretion in finding Juror 4 impartial and denying Maloney's motion to excuse him for cause because Juror 4 "ultimately assert[ed] an ability to be fair and impartial." *See Martinez-Salazar*, 146 F.3d at 656. A few of our prior cases support our decision that the district court here did not abuse its discretion in refusing to excuse Juror 4 for cause.

In *Alexander*, two prospective jurors stated that they had been robbery victims. 48 F.3d at 1482. The first prospective juror stated that "he 'believed' he nonetheless could be fair and impartial despite the subject matter of the case—armed bank robbery." *Id.* The district court did not abuse its discretion for finding him impartial, because, even though he "initially said he 'believed' he could be impartial, . . . he ultimately stated definitively that he could separate his experience from the facts of the case and act fairly."[1] *Id.* at

---

[1] The statements we found definitive and unequivocal were as follows:

> THE COURT: . . . Do you feel that you can be fair and impartial in this kind of case or not?
>
> JUROR AUSTIN: I believe so.

1484. The second prospective juror indicated that her husband had been held at gunpoint. *Id.* at 1483 n.2. After being asked whether her husband's experience would impede her from being impartial she responded, "I don't believe so, no." *Id.* Then, after being asked whether she could set aside her feelings and be impartial, she stated, "I believe so, yes." *Id.* After noting that this was a close call, we held that the district court did not abuse its discretion, because deference is due the district court, it was able to view her demeanor and assess her credibility, and the defendant failed to meet his burden of proof. *Id.* at 1484.

In *United States v. Daly*, the prospective juror indicated that his former employment may impair his partiality. 716 F.2d 1499, 1507 (9th Cir. 1983). The court followed up by asking whether he could set that aside. *Id.* He repeatedly stated, "I will try." *Id.* Ultimately, the court asked: "Well, do you think you could do that? That is only a decision that you can make . . . ." *Id.* The prospective juror responded, "Okay, I will do it." *Id.* We determined that reversal was not required, because the defendant failed to show that the prospective juror was actually biased. *Id.*

----

. . . .

> THE COURT: Do you feel-and you are probably the
> only person who can tell us this. Do you feel you can
> separate that out and be fair when you hear the facts of
> a case that are somewhat similar to you?
>
> JUROR AUSTIN: Yes sir.

*Alexander*, 48 F.3d at 1482 n.1.

Conversely, in *Martinez-Salazar*, the district court abused its discretion by not excusing a juror for cause, "because [the juror] did not and would not affirmatively state that he could lay aside his admitted bias in favor of the prosecution." *Martinez-Salazar*, 146 F.3d at 656.  The juror "clearly acknowledged this bias, even after being instructed by the district court that it was 'contrary to our whole system of justice.'  He never retreated from his statement of bias; he only cryptically stated that he understood the presumption of innocence 'in theory.'" *Id.*

Comparing Juror 4's statements to the situations in the cases just recounted, the district court did not abuse its discretion in denying defendant's motion to excuse Juror 4 for cause, because Juror 4 ultimately stated that he could be impartial.

## B.  Jury Instructions

### 1.  Legal Standards

"We review de novo the denial of a jury instruction based on a question of law." *United States v. Castagana*, 604 F.3d 1160, 1163 n.2 (9th Cir. 2010) (citing *United States v. Wiseman*, 274 F.3d 1235, 1240 (9th Cir. 2001)).  This includes whether the jury instructions adequately cover the defendant's theory of defense.  *United States v. Duran*, 59 F.3d 938, 941 (9th Cir. 1995).  "It is not reversible error, however, to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory."  *Id.* (alteration in original omitted) (quoting *United States v. Dees*, 34 F.3d 838, 842 (9th Cir.1994)).  We review the district court's

formulation of the jury instructions for abuse of discretion. *United States v. Woodley*, 9 F.3d 774, 780 (9th Cir. 1993). "We examine whether or not the instructions taken as a whole were misleading or represented a statement inadequate to guide the jury's deliberations." *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1991) (internal quotation marks omitted).

"Neither the prosecution nor a defendant is entitled to the particular language requested in a proposed jury instruction." *Id.* "A trial court is given substantial latitude in tailoring jury instructions so long as they fairly and adequately cover the issues presented." *Id.* (internal quotation marks omitted).

Character "testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and . . . in the federal courts a jury in a proper case should be so instructed." *Michelson v. United States*, 335 U.S. 469, 476 (1948) (citing *Edgington v. United States*, 164 U.S. 361, 366 (1896)). Ninth Circuit law indicates that the requirement set forth by the Supreme Court is met by "[i]nstructing the jury that good-character testimony, 'like other testimony,' may generate a reasonable doubt as to guilt, justifying an acquittal . . . ." *Smith v. United States*, 305 F.2d 197, 206 (9th Cir. 1962); *accord Carbo*, 314 F.2d at 746. The Ninth Circuit does not "require any more than that the jury be freely permitted to consider character evidence along with all other evidence upon the issue of guilt." *Carbo*, 314 F.2d at 746.

### 2. Pertinent Facts

Maloney called three character witnesses that testified to his honesty, truthfulness, and integrity. Based on these

witnesses, Maloney submitted the following proposed jury instruction:

> Mr. Maloney presented evidence to show that he enjoys a reputation for honesty, truthfulness, and integrity in his community. Such evidence may indicate to you that it is improbable that a person of such character would commit the crimes charged, and, therefore, cause you to have a reasonable doubt as to his guilt. You should consider any evidence of Mr. Maloney's good character along with all the other evidence in the case and give it such weight as you believe it deserves. If, when considered with all the other evidence presented during this trial, the evidence of Mr. Maloney's good character creates a reasonable doubt in your mind as to his guilt, you should find him not guilty.

The district court refused to give the instruction. Instead, the court gave the former 2003 Ninth Circuit instruction No. 4.4, which states: "You have heard evidence of the defendant's character for truthfulness, honesty and law abidingness. In deciding this case, you should consider that evidence together with and in the same manner as all the other evidence in the case." The court indicated that it was unnecessary to even give the former instruction 4.4, because in 2010, the Ninth Circuit Jury Committee indicated that it believed a jury instruction regarding character evidence of the defendant adds nothing to "the general instruction regarding the consideration and weighing of evidence, which is set out

in, among other places, instruction No. 8." *See* Model Crim.
Jury Instr. 9th Cir. 4.4 (2010).

### 3. Analysis

Maloney argues that the district court erred, because the
court's instructions failed "to explain that evidence of [the]
defendant's good character may create reasonable doubt of
guilt." In other words, Maloney contends that the district
court's formulation of the jury instructions did not adequately
present the nexus between good character and reasonable
doubt. Maloney's argument seems to be about the language
and formulation of the jury instructions, which should be
reviewed for an abuse of discretion. *See Woodley*, 9 F.3d at
780; *United States v. Marabelles*, 724 F.2d 1374, 1383 (9th
Cir. 1984) ("Finally, although a criminal defendant is entitled
to an instruction regarding his theory of the case, challenges
which merely pertain to the trial judge's language or
formulation of the charge are reversible only for an abuse of
discretion."). Maloney makes a standard of review argument
that urges us to apply a de novo standard, but we find the
argument confusing. Nonetheless, a decision as to the proper
standard of review will not control the outcome, because,
even under de novo review, the district court did not err.

There was no error, because the district court's jury
instructions did not mislead the jury or inaccurately state the
law. *See Powell*, 955 F.2d at 1210. Instead, reviewing the
instructions as a whole, we find that they indicated "that
good-character testimony, 'like other testimony,' may
generate a reasonable doubt as to guilt, justifying an
acquittal," *Smith*, 305 F.2d at 206, and that the jury was

"free[] . . . to consider character evidence along with all other evidence upon the issue of guilt," *Carbo*, 314 F.2d at 746.

The district court instructed the jury that, "[i]f after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty." The court instructed that reasonable doubt "may arise from a careful and impartial consideration of all the evidence." The district court also indicated that "all the evidence" includes character testimony: "You have heard evidence of the defendant's character for truthfulness, honesty and law abidingness. In deciding this case, you should consider that evidence together with and in the same manner as all the other evidence in the case." Lastly, the jury instructions state that the jury must consider all the instructions and that they are all important. The district court's instructions "fairly and adequately cover the issues presented." *See Powell*, 955 F.2d at 1210 (internal quotation mark omitted).

## C. Closing Arguments

### 1. Legal Standards

The district court "is given great latitude in . . . limiting the scope of closing summations." *Herring v. New York*, 422 U.S. 853, 862 (1975). The district court has broad discretion to "ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial." *Id.* "[T]he trial court is presumed to be in a better position . . . to gauge" the appropriateness of arguments made during closing summations. *See Interstate*

*Markings, Inc. v. Mingus Constructors, Inc.*, 941 F.2d 1010, 1015 (9th Cir. 1991). As such, it is left to the district court's sound discretion, on a case-by-case basis, to determine whether a defendant should be granted surrebuttal summation. *United States v. Garcia*, 94 F.3d 57, 63 (2d Cir. 1996). We therefore review a district court's decision to deny surrebuttal for an abuse of discretion. *See United States v. Butcher*, 926 F.2d 811, 817 (9th Cir. 1991) ("We review a district court's rulings on the admission or exclusion of surrebuttal evidence for abuse of discretion.").

In deciding whether a district court has abused its discretion in denying surrebuttal, we must recognize that prosecutors are "granted reasonable latitude to fashion closing arguments." *Gray*, 876 F.2d at 1417. "Although it is improper to base closing arguments upon evidence not in the record, prosecutors are free to argue reasonable inferences from the evidence." *Id.* (citation omitted). "During closing argument, '[p]rosecutors have considerable leeway to strike "hard blows" based on the evidence and all reasonable inferences from the evidence.'" *United States v. Hermanek*, 289 F.3d 1076, 1100 (9th Cir. 2002) (alteration in original) (quoting *United States v. Henderson*, 241 F.3d 638, 652 (9th Cir. 2000)). However, in the specific context of rebuttal summation, "a prosecutor cannot use rebuttal to put forth new arguments, but is restricted to responding to the points made by the defense counsel in closing argument." *Taylor*, 728 F.2d at 937.

Notwithstanding, "[i]t is 'fair advocacy' for the prosecution to advance an argument in rebuttal to which the defendant has opened the door." *Gray*, 876 F.2d at 1417 (quoting *United States v. Lopez*, 803 F.2d 969, 972 (9th Cir.

1986)). Therefore, a district court abuses its discretion by not allowing defendant surrebuttal if the prosecution raises new issues on rebuttal to which the defense has not opened the door in its closing argument and which are not based on reasonable inferences from the record. *See* 2A Charles Alan Wright, et al., Federal Practice & Procedure, Rules of Criminal Procedure § 476 n.4 (4th ed.) ("Defendant has no right of surrebuttal where the prosecution has not raised any new issues in its rebuttal." (citing *United States v. Sarmiento*, 744 F.2d 755, 766 (11th Cir. 1984)); *Sayetsitty*, 107 F.3d at 1409–10 (noting that the prosecution does not make improper rebuttal comments when they embrace reasonable inferences from the record and defense counsel invited a reply in closing argument).

The district court's underlying determinations of whether the prosecution's rebuttal argument responded to points made by the defendant in closing argument and whether the prosecution's points were based on reasonable inferences are afforded deference. *Gray*, 876 F.2d at 1417 ("We review a district court's determination that rebuttal statements constitute permissible inferences for an abuse of discretion," and "[w]e review district court determinations regarding the proper scope of rebuttal closing argument for an abuse of discretion."). The district court's decisions must be "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record" to be an abuse of discretion. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (internal quotation marks omitted). Our application of that highly deferential standard of review differs from the dissent's, which relies on case law that did not apply the *Hinkson* standard, which our en banc panel clarified in 2009.

Even if a district court abuses its discretion in denying a defendant's request for surrebuttal, harmless error review applies. *See United States v. Reyes*, 660 F.3d 454, 461 (9th Cir. 2011). In deciding whether the denial of surrebuttal was harmless error "we consider in the context of the entire trial 'whether it is more probable than not that the prosecutor's conduct materially affected the fairness of the trial.'" *Id.* (quoting *United States v. McKoy*, 771 F.2d 1207, 1212 (9th Cir. 1985)).

## 2. Pertinent Facts

In Maloney's opening statement, he set forth his defense that he did not know the marijuana was in the cab of his truck and that he was set up by Robert Hernandez. During trial, Maloney testified that he had no knowledge of the marijuana. Essentially, Maloney testified about the events surrounding the arrest and that Robert Hernandez must have hidden the marijuana in the truck without Maloney's knowledge.

Maloney testified that his part-time employer[2] referred him to Hernandez, who was looking for a truck driver. Maloney had driven large trucks in the late 1980s and early 1990s. Upon meeting Hernandez, Hernandez proposed to have Maloney drive a truck as an independent contractor. Maloney would purchase and use one of Hernandez's old trucks and slowly pay it off as he worked. Maloney told Hernandez he had a commercial permit but not a commercial license. Therefore, Hernandez put Maloney's name on the side of the truck, and Maloney practiced driving the truck.

---

[2] The record does not indicate what type of work Maloney was doing for his part-time employer.

Maloney and Hernandez went to the "trucking insurance place" twice, the first time to fill out paperwork and the second time to get plates and a registration sticker. Maloney stated that the insurance was never in his name. Later, Hernandez accompanied Maloney to Maloney's commercial driving test, but he failed.

Maloney testified that a week after the failed test, "[Hernandez] called [Maloney] and said that he had a trip, a short run. That one of his drivers' [Rick Garcia] . . . truck[s] had broke[n] down. And because he had a license he could use [Maloney's] truck and [Maloney] could get some experience." Hernandez told Maloney that Garcia would be going with Maloney to Riverside, California, to pick up a load of Clorox and deliver it to Las Vegas, Nevada. Maloney agreed to go.

Garcia and Maloney used the truck to transport Clorox from Riverside to Las Vegas. They arrived in Las Vegas in the late afternoon, so they stayed at a truck stop in Las Vegas. The next morning they dropped off the load. Hernandez called that morning and requested they drive to El Centro, California, to pick up a new load, because he could not find a load in Las Vegas.

Garcia and Maloney then drove to El Centro and met Hernandez at a truck stop. However, Hernandez said that he had not procured a job yet in El Centro, so he put Maloney up in a hotel for two nights. Hernandez then told Maloney that he had a load in Blythe, California, and instructed him to drive alone to Blythe and call Hernandez for the address when he arrived. Garcia was not present, and Maloney did not know where Garcia was or why he was absent.

Before leaving for Blythe, Maloney inspected the truck but not the cab. It was on his way to Blythe that Maloney stopped at the checkpoint and was arrested. Thereafter, Maloney and investigating agents were unable to contact Hernandez.

On re-direct, Maloney introduced the commercial driving permit into evidence; it was dated April 12, 2010. Maloney also introduced into evidence an insurance liability certificate for the truck. The insurance certificate listed Andrew David Gil as the driver of the truck.

Then, on re-cross examination, Maloney testified that he met Hernandez in early May or June. The Government also verified that Maloney obtained the permit in April. Next, the Government verified that Maloney testified that he went to the insurance business to get insurance. Then the Government asked how many days it was before he left for Las Vegas that he visited the insurance business, but Maloney could not remember. The Government asked who went with him to the insurance business, and Maloney said Hernandez drove him there. Lastly, the Government continued by asking who Andrew David Gil was, but Maloney did not know.

During closing argument, Maloney's counsel reiterated the defense theory and claimed that the evidence showed that he did not know about the marijuana. Maloney's counsel went through Maloney's testimony and other evidence and asserted that it showed that Maloney was set up and had no knowledge of the marijuana.

After giving Maloney's interpretation of the evidence, Maloney's counsel urged: "What [Maloney] testified to

yesterday was reasonable and it was credible. And the Government is trying to say it is completely unreasonable, it is preposterous." Then counsel proffered reasons why the "work-to-own" idea corroborated Maloney's testimony, because it was obviously used to get Maloney to drive for Hernandez and limit Hernandez's risk. Counsel continued by stating:

> First of all we know, inferentially, the last person to have the truck before John Maloney got in it in El Centro and drove it to the checkpoint was obviously the person using the name Robert Hernandez. Robert Hernandez could easily have taken whatever documents John had in that truck and gotten rid of them for whatever reason, and John would not necessarily have been aware of that – likely would not have been aware of that.

Maloney's counsel concluded by arguing that "[Maloney's] testimony was palpable, visceral, and it was real." Further, Maloney's counsel stated: "Did the Government prove him a liar beyond a reasonable doubt? Was there a got-you moment there where he gets nailed? Absolutely not. [Maloney] told you what happened to him, and he told you in a credible, reasonable way."

In rebuttal closing argument, the Government discussed what evidence was presented but then turned to what evidence was missing in order to disprove Maloney's theory of the case and prove his testimony unworthy of belief. The Government's comments and arguments on the "missing" evidence are pertinent to this appeal.

First, after referencing Maloney's argument that someone else had access to the truck and could have taken documents, the Government noted that by taking the insurance certificate and registration document Hernandez would increase the likelihood of having law enforcement find the marijuana. Similarly, the Government noted the required trip log and cargo manifest were also missing from the truck. Further, to cast doubt on Maloney's credibility, the Government pointed out that the insurance certificate (which was missing from the truck but offered into evidence during Maloney's testimony) was dated June 14, 2010, the day he left for Las Vegas. The Government called this the "other kicker." The Government also pointed out Andrew David Gil's name was on the insurance certificate and even had Gil's drivers license number.

Maloney's counsel objected twice on the ground that the Government misrepresented the testimony. The court overruled the objections, "with the admonition that this is counsel's argument, it is up to the jury to determine the facts."

Second, the Government noted that Maloney testified that he had been away from trucking for many years until meeting Hernandez in late May or early June. However, the Government argued that this made no sense because Maloney testified to applying for a Class A license in April 2010, well before meeting with Hernandez. Thus, according to the Government, Maloney should not be believed, because there would be no reason to seek the license in April if he had truly just returned to trucking in May or June.

Third, the Government argued that Maloney's story was generally unbelievable because there was no evidence of any

luggage. The Government reasoned that, if Maloney knew he was going to be gone and if he truly was gone for three days, then he would have brought luggage. The Government began the rebuttal closing argument with references to the movie *A Few Good Men* to analogize Maloney's lack of luggage with the scene where Tom Cruise inspects the murdered marine's barracks. Just as the marine would have had luggage if he was truly awaiting transport in the movie, Maloney would have had luggage if he really was telling the truth about being gone for three days.

After the Government ended its rebuttal closing argument, Maloney's counsel moved for surrebuttal, arguing that the Government made three new arguments that he was unaware would be made: (1) that the date of getting the insurance certificate indicated that Maloney lied about the date he got the certificate even though Maloney never stated the exact day he received it; (2) that the evidence of Maloney trying to get a learner's permit in April indicated that he was lying about being approached to drive by Hernandez; and (3) that Maloney's counsel never asked about Maloney's luggage during testimony, because this argument was new, and Maloney would have testified that he had a bag but it disappeared. Maloney's counsel argued that, because these arguments did not come out in the prosecution's initial closing argument, he had no chance to respond. The district court denied the motion for surrebuttal, stating:

> I would decline that invitation. I think we followed the normal order, that closing argument, here, I think, was appropriate in all respects. I am concerned about having a surrebuttal based on the arguments presented.

> Also, Mr. Maloney testified. Certain things were testified to, certain things were not. And there is going to be an interpretation on any surrebuttal to proffer what he would have testified about.

The defense later moved for a mistrial, which was also denied.

### 3. Analysis

#### i. Misconduct

Maloney argues that the prosecution's discussion about the absence of luggage, the insurance certificate, and Maloney's learner's permit constituted new arguments, which were improper during rebuttal summation. He argues that the improper arguments prejudiced him such that a new trial is required, because the district court did not allow surrebuttal. The prosecution claims these statements were based upon reasonable inferences from the evidence and that defense counsel's statements during closing arguments opened the door to the prosecution's rebuttal summation.

The district court did not abuse its discretion in determining that the Government's rebuttal summation was proper and thus no surrebuttal was required. Maloney's counsel opened the door to argument addressing the credibility and believability of Maloney and his story. Specifically, defense counsel invited a reply by the prosecution to address Maloney's claims that "what [Maloney] testified to yesterday was reasonable and it was credible. And the Government is trying to say it is completely

unreasonable, it is preposterous." In his closing argument, defense counsel concluded by emphasizing that Maloney's "testimony was palpable, visceral, and it was real" and that the Government never proved him a liar beyond a reasonable doubt. In essence, defense counsel argued to the jury that Maloney should be found not guilty, because Maloney himself and his story were believable and credible. However, defense counsel did not stop there, counsel went on to assert that the Government had never cast doubt on Maloney's credibility or honesty.

To rebut Maloney's closing argument claims, the prosecution referred to potential factual inconsistencies in Maloney's testimony. The prosecution's rebuttal statements (argued to be improper new arguments by Maloney) about the insurance certificate, the driving permit, and the lack of luggage were proffered to cast doubt on the truthfulness and credibility of Maloney and the reasonableness of his story. The district court had discretion to determine whether the prosecution was within the proper scope of rebuttal summation, and it was neither implausible nor illogical for the district court to find that the prosecution's statements in rebuttal were invited by defense counsel. *See Gray*, 876 F.2d at 1417.

Further, even though defense counsel's closing argument did not expressly mention the date of the insurance certificate, drivers permit, trip log, cargo manifest, or luggage, defense counsel opened the door to that information being presented in the prosecution's rebuttal summation by basing its argument on the proposition that the Government had not cast doubt on Maloney's credibility and had not shown him to be a liar. The specific content of the prosecution's arguments are

red herrings. Defense counsel opens the door to topics or issues, not specific facts. *See United States v. Lawson*, 483 F.2d 535, 538 (8th Cir. 1973) (noting rebuttal was likely proper because defense counsel had spoken to the same areas of argument).

In this case, the Government's rebuttal argument pointed to apparent factual inconsistencies in Maloney's testimony to show him incredible and pointed to problems in Maloney's story to show it unreasonable. First, although Maloney testified that he and Hernandez went to get insurance weeks before the Las Vegas trip, the insurance certificate was dated the day Maloney allegedly went to Las Vegas. Second, although Maloney testified that he had not driven trucks since the late 80's and early 90's and did not meet Hernandez until late May or early June of 2010, his commercial permit was dated April 12, 2010. Third, despite a requirement that all common carriers have trip logs and cargo manifests, Maloney had neither. Lastly, although Maloney stated that he had been on the road for three days before the arrest, there was no evidence of any luggage. It is not illogical or implausible to conclude that the fundamental point of each of these facts is that Maloney was not credible and his story unreasonable because there seemed to be inconsistencies. Thus, the district court did not abuse its discretion in determining that the prosecution's rebuttal summation was proper as a response to defense counsel's assertions that the prosecutor had never proved Maloney a liar.[3]

---

[3] The dissent cites our sister circuit case, *United States v. Rubinson*, 543 F.2d 951, 966 (2d Cir. 1976), for the proposition that defense counsel opens the door only when unexpected arguments are raised for the first time during defendant's closing argument. The dissent reasons that,

Our case of *United States v. Gray* supports this conclusion. There we stated that "[i]t is 'fair advocacy' for the prosecution to advance an argument in rebuttal to which the defendant has opened the door." *Gray*, 876 F.2d at 1417; *see also United States v. Mende*, 43 F.3d 1298, 1300–01 (9th Cir. 1995). In *Gray*, we found that the Government's closing argument was not beyond the scope of rebuttal summation. In that case, Gray missed his sentencing hearing and was indicted for the absence. *Gray*, 876 F.2d at 1413. A warrant was issued for his arrest, and about two and a half months later Gray was detained in Mexico, transferred to the border, and arrested. *Id*. At Gray's trial, no one testified that Gray

---

because Maloney did not open the door *unexpectedly* during closing argument on the issue of his credibility, the prosecutor should not have been allowed to introduce new facts on rebuttal when those facts could have been introduced previously to rebut credibility. *Rubinson* states that the prosecution "may not use the defense's [closing argument] to justify the reference to facts or the assertion of claims which it could have, but did not, introduce at trial . . . ." *Id*.

In rebuttal, the prosecutor commented on testimony that came out at trial, specifically in answer to defense counsel's closing argument that Maloney's testimony was credible. Maloney testified that he was going on a short trip to Las Vegas and did not reference having any luggage in his testimony. The prosecutor attempted to address inconsistencies in Maloney's testimony during rebuttal in order to discredit Maloney. The prosecutor asked, "Where is his stuff?" Then he noted, "If he didn't have any luggage – or if he had luggage, then the possibility would have been, [Maloney had to] put it somewhere." Finally, the prosecutor concluded, if Maloney "had luggage, that [the rear cab] is where he would put it," requiring Maloney to have been in close proximity to where the marijuana was stashed on top of the bunk beds. The prosecutor raised questions about Maloney's testimony in order to alert the jury to this possible inconsistency. The prosecutor did not raise a new argument or a new issue. We also do not believe such an approach constitutes referencing new facts or claims during rebuttal.

was hiding in Mexico, and during closing arguments "the defense summation made no reference to Mr. Gray's arrest in Mexico." *Id.* at 1417 (internal quotation mark omitted). However, defense counsel argued during closing arguments that Gray was not aware of his sentencing date and his obligation to appear and that his failure to appear was not a continuing offense. *Id*. at 1417–18.

In rebuttal summation, the prosecutor argued that Gray was aware of his legal obligations, and the fact that it took nearly three months to find him in Mexico proved that he was *hiding* to evade his troubles. *See id.* at 1417. Defense counsel objected to the prosecution's argument, stating there was no evidence to indicate Gray was hiding. *Id*. The court held that Gray opened the door by bringing up Gray's intentions for going to Mexico; therefore, the prosecution's response was "well within the scope of rebuttal argument." *Id.* at 1418.

The district court here did not abuse its discretion in determining that the prosecution's arguments were permissible inferences from the record. *See id.* at 1417. First, regarding the insurance certificate, Maloney testified that he went to the insurance business with Hernandez well in advance of leaving for Las Vegas, the insurance certificate was dated the same day Maloney alleged he left for Las Vegas. Further, the insurance certificate named Maloney as the insured and Andrew David Gil as the scheduled driver, but Maloney testified that he did not know Gil. The Government brought out many of these inconsistencies during its cross and re-cross examination of Maloney. Thus, the district court did not abuse its discretion because the Government's rebuttal closing argument regarding the

insurance certificate was reasonable in light of the evidence presented. The prosecution made a permissible inference that Maloney's testimony was not credible, as evident from the inconsistencies between his testimony and other evidence before the jury.

Similarly, the district court did not abuse its discretion in determining that the Government's statements regarding Maloney's driving permit were permissible inferences because Maloney testified that he decided to start driving trucks again upon meeting Hernandez in May or June of 2010. In closing arguments, the Government reasoned that if Maloney's claims about the timing of his return to truck driving were true, it would not make sense for him to be applying for a commercial permit in April 2010, a month or so before meeting Hernandez. Pointing out this inconsistency did not contain any impermissible inferences which would lead us to conclude that the district court abused its discretion.

The district court also did not abuse its discretion by allowing the Government to raise the issue of Maloney's missing trip log and cargo manifest in closing argument. Although Maloney testified that he had a manifest for the load and knew it was required, none was found when the D.E.A. inspected the truck. This was another factual discrepancy that called into question Maloney's credibility, and it was not an abuse of discretion for the district court to allow it.

Lastly, the district court did not abuse its discretion in determining that the Government's rebuttal argument regarding Maloney's lack of luggage was a permissible inference from the record. Maloney testified that he had been on the road for three days at the time of his arrest. Maloney's

testimony also showed that he had the ability to make deliveries that could last up to ten days, that he had a sleeping area in his truck, and that his truck was specifically designed for long trips. Therefore, even though Maloney testified that Hernandez requested he make a "short run," the prosecution's inference that the trip necessitated luggage was "certainly within the bounds of fair advocacy." *See United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002). A prosecutor is allowed "to ask the jury to draw inferences from the evidence that the *prosecutor believes in good faith might be true*." *Id.* (emphasis added). Because there was support for the inference that could be "drawn from facts in the record[,]" the district court did not abuse its discretion in denying surrebuttal.[4] *See Hinkson*, 585 F.3d at 1264.

### ii. Harmless Error

Even if we were to find that the district court abused its discretion, any error in allowing the Government's summation was harmless. "Where defense counsel objects at trial to acts of alleged prosecutorial misconduct, we review for harmless error on defendant's appeal . . . ." *United States v. Hinton*, 31

[4] The dissent contends that this ruling will give way to a situation where a prosecutor could, on rebuttal, raise wholly unrelated arguments despite lack of supporting evidence (e.g., that the prosecutor here could have argued that Maloney cheated on his tax returns even though nothing in the record demonstrates this). Our holding today does not authorize such a scenario. Allowing the prosecutor to draw inferences based on the events to which a defendant testifies (i.e., the circumstances leading up to the arrest) is distinct from allowing the prosecutor to advance a new argument in rebuttal, to discuss a new issue in rebuttal, or even to argue unrelated facts simply to challenge credibility after the defendant testifies (e.g., introducing for the first time evidence that the defendant cheated on his or her taxes).

F.3d 817, 824 (9th Cir. 1994). The harmless error standard applies here because Maloney objected by moving for surrebuttal summation immediately following the Government's rebuttal summation. Harmless error requires us to "consider in the context of the entire trial whether it is more probable than not that the prosecutor's conduct materially affected the fairness of the trial." *Reyes*, 660 F.3d at 461 (internal quotation marks omitted).

Based on the entire context of the trial, it is not more probable than not that the fairness of Maloney's trial was affected. First, the evidence against Maloney was strong. He was driving the tractor-trailer, it had his name on it, and nine blocks of the marijuana were found in the cab behind the driver's seat of the tractor-trailer, sitting in plain view on the top bunk. This large quantity of marijuana was difficult to hide and would hardly be unnoticeable to Maloney. Maloney's only defense was that he was not aware of the marijuana.

Second, the judge admonished the jury that rebuttal summation was only the argument of counsel, not evidence, and that the jury had the job of determining the facts. *See United States v. Bracy*, 67 F.3d 1421, 1431 (9th Cir. 1995) (holding, on plain error review, that the district court's caution to the jury that questions, objections, statements, and arguments of counsel are not evidence "neutralized any prejudicial effect the prosecutor's statement may have had"). It is "presume[d] jurors follow the court's instructions absent extraordinary situations." *Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005).

Lastly, in response to the dissent, we are satisfied on this record that it was harmless error for Maloney's request for surrebuttal specifically about luggage to be denied. When Maloney's counsel requested surrebuttal, counsel stated that Maloney would have testified that he had a bag, but he did not know what happened to it. If the jury would have heard this argument, it would have been easy for the jury to infer that Maloney would have put the bag in the cab. Then when the bag went missing, he would have searched for the bag in the cab and found the nine bricks of marijuana on the top bunk.

Further, Maloney testified that Hernandez called him to make a "short run" to Las Vegas. Las Vegas is only a four hour drive from Riverside. Therefore, the prosecutor's argument was not necessarily in conflict with Maloney's testimony. The jury could have considered the lack-of-luggage argument and found no inconsistency with Maloney's testimony. If Maloney believed he was only going to Las Vegas, he would not have needed to pack luggage and there would have been no apparent reason for him to look in the cab of the truck. In contrast, if Maloney's defense counsel would have argued in surrebuttal that Maloney had a bag, the jury would have been left with an inconsistency in Maloney's story. Having luggage may have suggested to the jury that Maloney knew all along that he would be going to El Centro and Blythe. This would have jeopardized Maloney's credibility much more than the unanswered luggage statements made by the prosecution in rebuttal.

In sum, because the evidence against Maloney was strong, and because the district court gave an instruction that the jury is presumed to have followed, we cannot say that "it is more probable than not that the prosecutor's conduct materially

affected the fairness of the trial." *See Reyes*, 660 F.3d at 461 (quoting *McKoy*, 771 F.2d at 1212) (internal quotation marks omitted).

We disagree with the dissent's reading of our opinion that all *Hein v. Sullivan*, 601 F.3d 897 (9th Cir. 2010), factors suggest that the prosecutor's rebuttal necessitates a new trial for Maloney. First, we cannot conclude that the prosecutor misstated the evidence. As explained previously, the prosecutor did not definitively say Maloney was without luggage. He simply raised questions based on the record in order to alert the jury to a possible inconsistency. Second, while the judge did not admonish the jury to disregard the prosecutor's argument, the jury was instructed that counsel's arguments are not evidence. Thus, the jury would have understood that it could accept or reject the inferences suggested by the prosecutor. Third, defense counsel's closing argument opened the door to a response regarding why Maloney's testimony was not credible. Fourth, although defense counsel was not given an opportunity for surrebuttal, we do not consider this factor dispositive.

Finally, in light of the other evidence against Maloney, and in the context of the other arguments made by both counsel, we cannot conclude that the luggage argument was prominent in the jury's mind. Although the dissent argues that a jury note shows that the jury placed great emphasis on whether Maloney had luggage, we cannot draw that conclusion from the note. The note asked to see Exhibit K, which defense counsel used to elicit testimony from the case agent that Maloney had $1.27 on his person at the time of the arrest.

Even assuming the prosecutor's rebuttal was improper, we cannot conclude that a new trial is required. Thus, the district court's ruling must be affirmed.

## D. Cumulative Error

"In some cases, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). Because we find no error in this case, there can be no cumulative effect of multiple errors.

## III. CONCLUSION

For all of the foregoing reasons, the district court's judgment is **AFFIRMED**.

---

GILMAN, Circuit Judge, dissenting:

I agree with the majority's analysis on all but the following two issues: (1) whether the district court abused its discretion by refusing Maloney's request to respond in a surrebuttal to the government's "lack-of-luggage" argument that was raised for the first time during rebuttal; and (2) if so, whether that error warrants a new trial. Contrary to the majority, I believe that the answers to these two questions should be "yes." I therefore respectfully dissent.

## I. The district court abused its discretion

The lack-of-luggage argument played a prominent role in the government's rebuttal during closing arguments. As part of his rebuttal, the prosecutor asserted for the first time that Maloney must have been lying about the purpose of his trip between the California cities of El Centro and Blythe because there was no luggage found in the truck when it was stopped at the Highway 78 Border Patrol checkpoint. The prosecutor made this lack-of-luggage argument despite the fact that there was no evidence presented at trial to establish whether Maloney did or did not have luggage during the trip.

Emphasizing the new lack-of-luggage argument, the prosecutor began his rebuttal by describing a scene from *A Few Good Men*, a movie about a murder trial. In the scene described, an attorney played by Tom Cruise argued that he could prove that certain Marine officers had lied when they testified that the victim—who had died in the middle of the night—was scheduled to permanently leave the naval base at Guantanamo Bay early the next morning because there was no evidence that the victim had packed any of his belongings.

The prosecutor in the present case urged the jury to think about the evidence that was not presented, just like Tom Cruise had done in the movie:

> Which comes to the final thing that is not there. And when I tell you this, you will realize why I remembered the scene in *A Few Good Men*.

Remember the testimony [of Maloney]: I met Mr. Hernandez. He wanted me to drive. I have this truck that has the long-haul capacity. I can drive a long way. I can sleep in the back. But I tell you what, I can only limit it to 10 or 11 days because of my personal situation.

. . . .

*And the final thing that is not there: luggage. Where is his stuff?*

I [(speaking as Maloney)] am going to—I know that I have long-haul capabilities for 10 to 11 days. I go with this Clorox to Las Vegas. I spend the night in Las Vegas. I get a call[;] I got to go to El Centro. I have two days in El Centro.

*Where is his stuff?*

. . . .

*Where is his stuff?* Knowing it was going to be 10 days—knowing that he could go up to 10 days, he has the sleeping accommodations.

. . . .

*Because remember what is missing, among other things: luggage.* If he didn't have any luggage—or if he had luggage, then

the possibility would have been, I got to put it somewhere. And he put it—where would he put it? He would put it on the bed or on that top shelf [where the marijuana was located].

. . . .

Ladies and Gentlemen, the evidence here shows the defendant knew exactly what he was doing. That his versions of the events are not true, they are not reasonable, they make no sense. And that someone would not [sic] hire him and then risk the discovery by just putting [the marijuana] up on a shelf; when, if the defendant had luggage, that is where he would put it.

(Emphasis added.)

The government concedes that it never raised this argument before its rebuttal summation. And the prosecutor admitted to this court, in the following colloquy at oral argument, that he "sandbagg[ed]" Maloney by withholding the lack-of-luggage argument until rebuttal, when Maloney had no opportunity to respond:

> Judge Gilman: Alright, then why didn't you raise this [lack-of-luggage] argument in your first argument on summation?
>
> Assistant U.S. Attorney, Steve Miller: Because I don't believe that I needed to.

> Judge Gilman:   Aren't you sandbagging a bit—to wait for rebuttal?
>
> Miller:   Yes I was.

Put simply, the government held back the lack-of-luggage argument for rebuttal when the argument could have, and should have, been made earlier in the trial. *See United States v. Taylor*, 728 F.2d 930, 937 (7th Cir. 1984) (holding "that a prosecutor cannot use rebuttal to put forth new arguments, but is restricted to responding to the points made by the defense counsel in closing argument").

The majority excuses the government's belated argument by reasoning that defense counsel "opened the door to argument addressing the credibility and believability of Maloney and his story." (Maj. Op. at 26) But the open-the-door exception makes sense only if the door was unexpectedly opened for the first time during the defendant's closing argument. *See United States v. Rubinson*, 543 F.2d 951, 966 (2d Cir. 1976) (holding that defense counsel, by pointing out gaps in the government's proof that the government would "have been expected to negate previously," did not open the door to the government's reference to new facts on rebuttal that "it could have, but did not, introduce at trial"). The government should not be able to take advantage of this exception when it had ample notice of the defendant's credibility argument.

In this case, Maloney's main defense throughout the trial was to demonstrate his propensity for truthfulness. He called two character witnesses to testify to just that. And we have the government's concession that its failure to raise the lack-

of-luggage argument earlier was part of its strategy to "sandbag" Maloney, not because it was surprised by any contentions made by Maloney's counsel in closing argument.

The lack-of-luggage argument, moreover, was improper not just because it was raised for the first time on rebuttal. It was also improper because, in contrast to the information regarding the insurance certificate, drivers permit, trip log, and cargo manifest (which the prosecutor also presented in his rebuttal summation), the lack-of-luggage argument had no foundation in the record. *See United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989) (noting that "it is improper to base closing arguments upon evidence not in the record").

This crucial distinction is not addressed by the majority. Instead, the majority concludes that, "even though defense counsel's closing argument did not expressly mention the date of the insurance certificate, drivers permit, trip log, cargo manifest, or luggage, defense counsel opened the door to that information being presented in the prosecutor's rebuttal summation by basing its argument on the proposition that the Government had not cast doubt on Maloney's credibility and not shown him to be a liar." (Maj. Op. at 27) The majority then flatly states that "[t]he specific content of the prosecution's arguments are red herrings" because "[d]efense counsel opens the door to topics or issues, not specific facts." (*Id.* at 27-28)

But the case cited by the majority in support of that statement, *United States v. Lawson*, 483 F.2d 535 (8th Cir. 1973), stands only for the proposition that, "[w]hen confined to the evidence or reasonable inferences [drawn therefrom], the arguments of counsel are not to be too narrowly limited."

*Id.* at 539 (internal quotation marks omitted). *Lawson* has nothing to say about closing arguments that are *not* confined to the evidence in the record or reasonable inferences drawn therefrom. Under Ninth Circuit caselaw, those arguments are improper, *Gray*, 876 F.2d at 1417, and the majority fails to explain why a rebuttal argument fashioned from whole cloth (regarding the lack of luggage) should be treated the same as ones based on facts in the record (regarding the insurance certificate, drivers permit, trip log, and cargo manifest).

A brief hypothetical example reveals the flaw in the majority's reasoning. Suppose that the prosecutor in this case had mentioned for the first time during rebuttal, despite the lack of supporting evidence, that Maloney had broken his marriage vows and cheated on his tax returns. Under the majority's rule—that "defense counsel opens the door to topics or issues, not specific facts"—this argument would presumably be permissible because it bears on the "issue" of Maloney's credibility. But any such rebuttal argument would surely be improper. I do not think that this court should adopt a rule that, when taken to its logical conclusion, leads to such obviously incorrect results.

The majority later concludes that "the district court did not abuse its discretion in determining that the Government's rebuttal argument regarding Maloney's lack of luggage was a permissible inference from the record" because "the prosecution's inference that the trip necessitated luggage was 'certainly within the bounds of fair advocacy.'" (Maj. Op. at 31-32 (quoting *United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002)) But the prosecutor did not simply infer that the trip necessitated luggage; he also repeatedly stated that Maloney did not in fact have any luggage—an argument that

is based on *absolutely no record evidence*. I therefore fail to see how "there was support for the inference that could be drawn from facts in the record." (Maj. Op. at 32 (internal quotation marks omitted)) In sum, I believe that the district court abused its discretion in denying Maloney an opportunity to respond to the government's improper lack-of-luggage argument.

## II.  The district court's error was not harmless

The majority reasons in the alternative that even if the district court abused its discretion by prohibiting a surrebuttal by Maloney's counsel, that error was harmless. But I believe the district court's error warrants a new trial. When a district court abuses its discretion, a new trial is warranted if "it is more probable than not that the prosecutor's conduct materially affected the fairness of the trial." *United States v. Reyes*, 660 F.3d 454, 461 (9th Cir. 2011) (internal quotation marks omitted).

This court's decision in *Hein v. Sullivan*, 601 F.3d 897 (9th Cir. 2010), lists the following factors that we may consider in determining whether a prosecutor's improper argument requires a new trial:

> •  whether the prosecutor misstated the evidence;
>
> •  whether the judge admonished the jury to disregard the improper argument;
>
> •  whether defense counsel opened the door to the improper argument;

- whether defense counsel had adequate opportunity to rebut the argument; and

- the prominence of the argument in the context of the entire trial and weight of the evidence.

*Id.* at 912-13. Furthermore, an improper argument made during rebuttal is all the more effective because the defense is given no chance to refute it. *See United States v. Sanchez*, 659 F.3d 1252, 1261 (9th Cir. 2011) ("[T]he prosecutor presented the [improper] 'send a memo' rhetoric during his rebuttal, thus ensuring that it was the last argument the jury heard before going to the jury room to deliberate. This timing increased the risk that the inflammatory statement would improperly influence the jurors.").

Applying these principles to the facts of the present case, I believe that the district court's error is serious enough to warrant a new trial. All the *Hein* factors indicate that the prosecutor's improper argument was likely to have adversely affected the fairness of Maloney's trial. Most of the reasons why this is so have already been mentioned: (1) the lack-of-luggage argument was made at the very end of the case; (2) the prosecutor made the point several times and used a scene from a well-known movie for emphasis; (3) the prosecutor waited until rebuttal to bring up the argument even though he was fully aware of Maloney's defense theory much earlier; (4) there was no evidence regarding the existence of luggage in the record, despite the fact that Maloney testified and the prosecutor could have asked him about any luggage on cross-examination; (5) defense counsel moved for an opportunity to respond, stating that Maloney would have

testified that he in fact did have luggage with him prior to his arrest; and (6) the judge did not admonish the jury to disregard the argument about the absence of luggage. In addition, during the jury's deliberations, the jury sent a question to the judge concerning the items in Maloney's possession at the time that he was arrested. This indicates that the prosecutor's lack-of-luggage argument had an impact on the jury's deliberations. Taken together, all these factors show that the court's error was not harmless.

The majority nevertheless concludes that the error was harmless because "the evidence against Maloney was strong." (Maj. Op. at 33) In my view, the majority substantially overestimates the strength of the government's case. The case turned on whether Maloney was deemed credible by the jury. When a case comes "down to a battle over credibility," improper arguments are more likely to have an effect on the fundamental fairness of the trial. *See Sanchez*, 659 F.3d at 1260 ("Because the sole issue in Sanchez's case centered on witness credibility, the [improper prosecutorial] statement likely affected the jury's ability to decide the case fairly.").

The length of the jury's deliberations and its request for evidence showing the personal property possessed by Maloney when he was arrested further underscore the closeness of this case. Even though the trial's testimony and argument took the equivalent of only a day, the jury deliberated an entire afternoon and the next morning before reaching its verdict, which indicates that the verdict hung in the balance. This suggests a far closer case than the majority acknowledges.

I am equally unpersuaded by the majority's additional reasons for why the district court's error was harmless. First, the majority notes that defense counsel, in his request for surrebuttal, "stated that Maloney would have testified that he had a bag, but he did not know what happened to it." (Maj. Op. at 34) The majority then determines that, "[i]f the jury would have heard this argument, it would have been easy for the jury to infer that Maloney would have put the bag in the cab. Then when the bag went missing, he would have searched for the bag in the cab and found the nine bricks of marijuana on the top bunk." (Maj. Op. at 34.)

The problem with this reasoning is that it rests on nothing more than speculation. One could just as easily speculate that, if Maloney had had the chance to explain why he did not know what happened to the bag, he would have stated that he was unaware that his bag was missing at the time that he was arrested, or that he had the bag beside him on the passenger seat when he was arrested and did not know what happened to it afterward, or offered some other plausible explanation for its disappearance that would have given him no reason to search the sleeping quarters of the cab and spot the bricks of marijuana. Indeed, the record indicates that Maloney had no need to check the sleeping quarters of the cab because he slept in hotel rooms, rather than inside the cab, while he was on the road.

The majority also states that, "in light of the other evidence against Maloney, and in the context of the other arguments made by both counsel, we cannot conclude that the luggage argument was prominent in the jury's mind." (Maj. Op. at 35) I respectfully disagree. The prosecutor thought enough of the lack-of-luggage argument to save it for

"sandbagging" on rebuttal summation, with the argument being not just a passing reference but a central feature. And the jury was sufficiently interested in the argument to request information regarding the items in Maloney's possession at the time of his arrest—and concerned enough about the proper outcome of the case to spend a relatively long time deliberating. I would therefore vacate the district court's judgment and remand for a new trial. For all the foregoing reasons, I respectfully dissent.